# SUPERIOR COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **King & King, Chartered,**<br>c/o 3033 N. Dickerson Street<br>Arlington, Virginia 22207<br><div align="right">**Plaintiff**</div><br><div align="center">v.</div><br>**Harbert International, Inc.;**<br>c/o Mr. Raymond J. Harbert<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>**Bilhar International Establishment;**<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>**Bill Harbert International Construction, Inc.;**<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>**Raymond J. Harbert; and**<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>**William L. Harbert;**<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><div align="right">**Defendants**</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**06-0000367**<br><br>**Case No.**<br><br> |

# COMPLAINT

### Parties

1.     Plaintiff, King & King, Chartered is a law firm founded in the District of Columbia

in 1866 and organized and existing as a professional corporation under D.C. Code §29-401

**06 0324**

# FILED

FEB 2 3 2006

NANCY MAYER WHITTINGTON, CLERK

since October 9, 1973. At all times pertinent to this action its office was located in the District of Columbia.

2.    Defendant, Harbert International, Inc., hereinafter referred to as "HII," is a Delaware corporation domiciled in Birmingham, Alabama. HII was formed in 1981 as a subsidiary of Harbert Construction Company, hereinafter referred to as "HCC". HCC was founded in 1949 by John M. Harbert, who controlled that company and HII through his ownership of more than 75% of the capital stock of HCC. William L. Harbert, hereinafter referred to as "Bill Harbert," John's brother, owned various interests in HCC at various times, but such interest never exceeded 6% of the capital stock. The two brothers concentrated their efforts on developing HCC's construction business in both the domestic and international markets. By 1975 it was decided that the international business, in which defendant, Bill Harbert was primarily engaged had developed to an extent that warranted his receiving a greater share of the company profits than that represented by his minority interest in HCC. Defendant, Harbert International Establishment, hereinafter referred to as "HIE" was formed. Defendant, Bill Harbert initially owned 42% of HIE and HCC owned the other 58%. In 1977, a company named Harbert Corporation was formed as a holding company to hold the Harberts' various business interests including HIE. After HII was formed in 1981 the construction interests of HCC, including its ownership of HIE, were transferred to HII. In 1989, the ownership interest of defendant, Bill Harbert, in HIE was increased to 50%, with defendant, HII retaining ownership of the remaining 50%. Defendant, Bill L. Harbert was the President of HII from its inception until July 1990. In July 1990, Raymond J. Harbert succeeded his father, John Harbert, as CEO of HII and was also appointed its President, replacing his uncle, Bill Harbert who at that time became Vice Chairman of HII's Board of Directors.

2

3.      Defendant, Bilhar International Establishment is an entity organized and existing under the laws of the Principality of Liechtenstein, and is the successor in interest to HIE, which was organized under the laws of Liechtenstein in 1975. Initially, the company was named Harbert International Establishment ("HIE"). Its name was changed to Bilhar International Establishment in 1993. These entities are hereinafter commonly referred to as HIE.

4.      Defendant, Bill Harbert International Construction, Inc., hereinafter referred to as "BHIC" is a Delaware corporation domiciled in Birmingham, Alabama.

5.      Defendant, Raymond J. Harbert, is a citizen of the United States, and resides in or near Birmingham, Alabama. He is the President and CEO of Harbert Corporation or its successor and the Chairman and CEO of Harbert International, Inc., as well as its former President.

6.      Defendant, William L. Harbert, is a citizen of the United States, and resides in or near Birmingham, Alabama. He is the former President and CEO of Bill Harbert International Construction, Inc. and is, or was formerly, the Managing Director of HIE, and as previously stated above was the President of HII until July 1990, and Vice Chairman of its Board of Directors until 1992.


**Jurisdiction**

7.      This Court has jurisdiction over the subject matter and the defendants pursuant to D.C. Code §§11-921 and 13 – 423.

3

## History of Parties' Relationship

8.    Plaintiff first encountered the Harbert brothers in 1979 in Israel where a Harbert controlled company was participating in a construction joint venture known as Negev Airbase Constructors, which had been awarded a contract by the U.S. Army Corps of Engineers to design and build an airbase for the Israeli Ministry of Defense under the terms of the Camp David Peace Accords.

9.    Thereafter on a regular and continuing basis, throughout the 1980's and into the 1990's, plaintiff provided legal services with respect to various construction contracts awarded to HII by agencies of the United States Government, or funded by such agencies; including, but not limited to, the Rod el Farag Water Treatment Plant in Cairo, Egypt; funded by the United States through the U.S. Agency for International Development; construction of new U.S. Embassies in Bahrain and Pretoria, South Africa; renovation of the U.S. Embassy in Belgrade; a waste water treatment plant in Puerto Rico.  Plaintiff provided similar legal services to HII in connection with a coal loading facility contract in Punta Arenas, Chile.  Typically, plaintiff's involvement in such projects began with a telephone call from an individual representing defendant, HII, to plaintiff's office in Washington, D.C., requesting plaintiff's assistance in connection with a problem or problems that had arisen on a pending international construction project.  The individual attorneys assigned by plaintiff to work on such matters were physically located in the offices of the firm in the District of Columbia; although such attorneys did visit the specific project sites in the performance of such legal services.  At all times subsequent to the creation of HII in 1981, plaintiff reasonably believed that it had been engaged by and was providing legal services to defendant, HII, in respect to each of these international construction projects.  None of the

4

defendants, nor any other entity or individual ever did or said anything to plaintiff to counter plaintiff's belief in this regard until the spring of 2002.

### The Rod el Farag and Kwajalein Contracts

10.    The Rod el Farag and Kwajalein contracts are representative of the process under which plaintiff was typically engaged to provide legal services in connection with international construction contracts awarded to defendant, HII.

11.    The contract for construction of the Rod el Farag Water Treatment Plant was awarded to a joint venture consortium, comprised of HII and two other United States construction companies, in June 1982 by the General Organization for the Greater Cairo Water Supply, an agency of the Arab Republic of Egypt. The project was financed by the United States Government through the Agency for International Development. Disputes arose between the construction contractors and the Egyptian water supply agency in regard to numerous changes, unforseen subsurface conditions, suspensions, delays and interruptions to the work for which the Egyptian water supply agency was responsible.

12.    In 1985, prior to completion of work under the contract, plaintiff received a telephone call from Mr. E. Roy Anderson, who plaintiff understood to be an officer of defendant, HII, and who was located in London, England. Mr. Anderson requested that plaintiff send an attorney to Cairo, Egypt to investigate the facts underlying the problems encountered in the performance of the Rod el Farag contract, and to meet with him in London to advise as to the potential viability of a claim or claims for additional costs incurred by the consortium in performance of the work. It was plaintiff's understanding that defendant, HII, was the managing partner of the consortium

5

and that it held the majority financial interest in the same. Pursuant to Mr. Anderson's request, plaintiff sent one of its attorneys to Cairo, who met with representatives of defendant, HII, at the project site for several days; following which he met with Mr. Anderson in London to report the results of his investigations and to outline what needed to be done to develop a claim to be presented to the Egyptian water supply agency for payment. Plaintiff, thereafter, undertook the preparation of such claim; directing representatives of defendant, HII, and others in the development of the facts to support a claim by the consortium. A statement of such claim for additional compensation, as prepared by plaintiff, was submitted to the Egyptian water supply agency by the consortium under date of December 11, 1986, and, following extended but fruitless negotiations, the consortium advised the Egyptian water supply agency that it would pursue its rights to have its claim submitted to arbitration before the International Chamber of Commerce in Paris, France, as provided under the Rod el Farag contract. The claim as submitted for arbitration totaled US $12, 859,545.24 and Egyptian pounds 5,497,728.88. Plaintiff represented the consortium in the arbitration in Paris, and, following its successful opposition to an effort by the Egyptian party to dismiss the case for lack of jurisdiction, the parties settled the matter in late 1988 or early 1989 under the terms of which settlement, defendant, HII, and its consortium partners received an additional payment of approximately $7,000,000 under the contract.

13.    Plaintiff's involvement with the Kwajalein contracts followed a similar pattern. In 1987, defendant, HII was awarded Contract No. DACA 83-87-C-0100 by the United States Government, acting through the Army Corps of Engineers, for work to be performed at Kwajalein Atoll, Marshall Islands in support of the Strategic Defense Initiative, more commonly known as the Star Wars anti-ballistic missile defense system. This was the first of fifteen

6

contracts, hereinafter, the "Kwajalein contracts", ultimately awarded to defendant, HII, by the

Government for work at Kwajalein Atoll between the years 1987 and 1989. As with the Rod el

Farag project many disputes arose between the Government and defendant, HII, with respect to

contract performance. In July, 1990, defendant, Bill Harbert, then president of HII authorized the

engagement of plaintiff to provide legal advice and assistance with respect to the Kwajalein

contracts, and more particularly to help HII in the preparation and presentation of claims for

additional compensation for added costs incurred in contract performance. Pursuant to such

authorization, Mr. E. Roy Anderson called plaintiff's office in Washington, D.C. in July 1990,

and requested that plaintiff provide defendant, HII, with such legal assistance, and more

specifically, requested that one of plaintiff's attorneys meet with Mr. Anderson and other HII

representatives in Honolulu, Hawaii and at the project site in Kwajalein as soon as possible.

With its engagement by defendant, HII, in July 1990, plaintiff was actually involved, on,

essentially a continuous basis, in providing legal advice and assistance to HII in respect to

numerous claims and issues related to and arising out of the performance of the Kwajalein

contracts from that time until December 2002.

14.     Construction work under the Kwajalein contracts was finally completed in the fall of

1991; following the termination of Contract No. DACA 83-90-C-0006 by the United States for

its convenience on July 8, 1991. Prior to completion of the contract work, numerous claims for

various changes to the work had been submitted in the name of defendant, HII, at the job site

level. All of such claims had been submitted pursuant to the provisions of the Contract Disputes

Act of 1978, 41 U.S.C. §601, *et seq.*, hereinafter referred to as the "CDA," and included a

demand for payment of interest on any amounts found due on said claims as provided under the

7

CDA, 41 U.S.C. §611. Agreement on the principal amount amounts due on such claims was generally reached by the parties, but the Government's representatives steadfastly refused to make payment of any interest on the said amounts, as provided by the CDA. Accordingly, appeals were noted in the name of defendant, HII, from such refusal by the Government's contracting agency to make payment of such interest, and docketed before the Armed Services Board of Contract Appeals, hereinafter, "ASBCA"or the "Board," as also provided under the provisions of the Kwajalein contracts and the CDA. These "interest claims" totaled approximately $93,458.23 in value.

15.     In terms of additional costs incurred in performance of the Kwajalein contracts, the major factors contributing to or causing the same were delay and disruption to the progress of the work under the various contracts resulting from design changes, extra work, differing subsurface site conditions, and work suspensions for which the Government was contractually and legally responsible. However, by early 1992, it was readily apparent that these issues were not fully addressed in the separate claims for changes being prepared by the job-site office; particularly as related to the overall or global impact of such delaying factors on U.S. management, engineering and administrative personnel costs and expenses, equipment expenses, and direct labor costs. Accordingly, plaintiff recommended that such global impact issues be addressed in a separate, comprehensive claim that would take into account any and all delaying events that had affected performance of the work under all 15 of the Kwajalein contracts and for which defendant, HII, believed the Government was contractually and legally responsible.

16.     Throughout 1992 and 1993, plaintiff's attorneys devoted thousands of hours of work to the development of the facts relating to the performances of each of the 15 Kwajalein contracts

and the Government caused delays to such work, which efforts included direction and guidance

to individuals at Kwajalein, whom plaintiff understood to be employees or representatives of

defendant, HII, in the analysis of labor hours worked on each separate contract, and the

uncompensated direct labor costs incurred; and in the identification and evaluation of

uncompensated administrative personnel costs and other overhead expenses and equipment costs

experienced in performance of the Kwajalein contracts. Such efforts by plaintiff's attorneys

culminated in a formal written claim, dated January 28, 1994, submitted by defendant, HII, to the

Government's Contracting Officer at the U.S. Army Engineer District Office in Honolulu,

Hawaii. The claim sought an adjustment in contract price for the Kwajalein work in the amount

of $12,856,605, plus interest thereon and demanded a decision by the Contracting Officer on the

same, both in accordance with the CDA. The claim of January 28, 1994 was signed by

defendant, Raymond J. Harbert, as President of Harbert International, Inc., and as required by the

provisions of the CDA, included the following certification, also signed by defendant, Raymond

J. Harbert, as President of Harbert International, Inc.:

> I hereby certify that the claim of Harbert International, Inc. for an equitable
> adjustment in the amount of $12,856,605 under Contract Nos.:
>
>> DACA83-87-C-0100, DACA83-88-C-0010, DACA83-89-C-0023,
>> DACA83-89-C-0045, DACA83-90-C-0001, DACA83-90-C-0006,
>> DACA83–89-M-0263, DACA83-89-M-0272, DACA83–89-M-
>> 0285, DACA83-89-C-0097, DACA83-89-C-0098, DACA83-89-
>> M-0100, DACA83-89-C-0096, DACA83-90-M--0314, DACA83-
>> 90-M-0101
>
> submitted to the Contracting Officer by letter dated  January 28, 1994 , is made in
> good faith; that the supporting data are accurate and complete to the best of the
> Contractor's knowledge and belief, and that the amount requested accurately

reflects the contract adjustment for which the Contractor believes the Government
is liable.

<div align="right">

   (Original signed by defendant, Raymond J. Harbert)
Raymond J. Harbert
President
Harbert International, Inc.

</div>

The claim as submitted and certified by defendants, Raymond J. Harbert and HII was received by

the Government's Contracting Officer in Honolulu on February 4, 1994, and interest on the

$12,856,605 claimed began to accrue on that date.

17.    Progress toward resolution of the various claims and appeals arising out of the Kwajalein

contracts was continuously impeded by repeated efforts on the part of Government counsel in

Honolulu to have the appeals before the ASBCA dismissed for lack of jurisdiction under various

legal theories, and in respect to the claim of January 28, 1994 referred to in Par. 16, above, to

withhold a final decision on the same on the baseless contention that the Government's

Contracting Officer had no authority to render such a decision. These contentions of the

Government's trial counsel in Honolulu resulted in numerous motions, responses and replies by

defendant, HII, prepared and filed by plaintiff with the ASBCA beginning in 1993 and

continuing through 1996. Each of these attempts by the Government's attorney to avoid

decisions by the Board on the merits of the Kwajalein claims were ultimately rejected by

decisions rendered by the ASBCA, but plaintiff was required to expend significant efforts and

time in opposing the positions and arguments of Government counsel. In addition to such formal

pre-trial proceedings before the Board, plaintiff's attorneys also devoted long hours and effort in

<div align="center">

10

</div>

the conduct of documentary discovery in the Honolulu offices of the Army Corps of Engineers, and in responding to discovery requests by the Government's trial counsel.

18.     Under date of February 5, 1997, Government counsel filed a motion requesting the production of all documents affecting any assignment of the Kwajalein contracts by defendant, HII, to HIE, and shortly thereafter Government counsel filed a motion with the ASBCA to dismiss all of the pending Kwajalein contracts appeals on the grounds that defendant, HII, had illegally assigned the Kwajalein contracts to HIE without the knowledge or consent of the Government.

19.     Following the appointment of defendant, Raymond J. Harbert, as President of HII in July 1990, a decision was made by the board of directors of HII to reduce the company's participation in the construction business and to gradually sell off its construction business.  It was ultimately agreed that defendant, Bill Harbert, would purchase HII's international construction business by acquiring HII's interest in HIE, An agreement affecting such sale was executed on December 9, 1991; under the terms of which it was agreed, *inter alia*, that any and all recoveries from pending or future claims, including any under the Kwajalein contracts, would be for HIE's sole benefit and account, and that HII would have no interest or claim therein.  Since the Kwajalein contracts had been awarded to defendant, HII, it was the further understanding of the parties to the agreement of December 9, 1991 that HII would provide assistance necessary for defendant, Bill Harbert, to maintain and prosecute any such claims and appeals arising out of those contracts to final resolution in the name of defendant, HII; but at the sole expense of defendant, Bill Harbert. Following the creation of defendant, HIE, in 1975, a decision was made by the Board of Directors of defendant, HII, in September 1981 authorizing enumerated officers of HII, including

11

defendant, Bill Harbert, to execute documents of assignment on behalf of HII, assigning overseas construction contracts it had been awarded and/or the proceeds therefrom to HIE. Essentially, performance of all overseas construction contracts awarded to defendant, HII, after September 1981 were assigned to HIE pursuant to this decision of the Board of Directors of HII.

20.     Plaintiff was unaware of the September 1981 decision of HII's Board of Directors referred to above in Par. 19, or of the agreement executed by defendants, HII and Bill Harbert on December 9, 1991, or of the respective provisions of the same.   Nor was plaintiff aware or advised by any representative of defendants, or otherwise informed that any assignments by defendant, HII, may have been made to HIE of the Kwajalein contracts, prior to the demand by counsel for the Government in Honolulu in February 1997 for the production of any such assignment documents.

21.     In the course of plaintiff's investigation of the "assignment of contracts" issue, it was discovered that defendant, HII, had advised the Government's representatives in Honolulu of its desire to assign performance of the work under the Kwajalein contracts to HIE, and had obtained the consent of the Government's Contracting Officer to do so; on the provision that HII would remain contractually and financially obligated under those contracts to the Government. Under the circumstances, plaintiff believed that the contentions of the Government's trial attorney in Honolulu that HII had illegally assigned the Kwajalein contracts were without foundation, that the Government's efforts to obtain dismissal of the appeals pending before the ASBCA would fail, and so advised defendant, Bill Harbert and the Board. Therefore, plaintiff sought an early hearing before the Board to resolve the "assignment of contracts" issue, since a ruling unfavorable to the appellant by that Board on that issue might result in the dismissal of all of the

appeals. Government counsel in Honolulu sought to further delay any hearing before the Board to resolve the "assignment of contracts" issue or any other issue presented by the pending appeals; filing instead further requests for discovery.

### The Suspension of the Appeals

22.    In response to plaintiff's request for an early hearing on the "assignment of contracts" issue, the ASBCA on September 26, 1997, advised the parties that it agreed with plaintiff, and intended to proceed first with an evidentiary hearing on that issue; followed by proceedings to dispose of the "interest appeals," and finally disposition of the "global impact" claim. On December 8, 1997, the Board issued a further order confirming the order and procedure under which it intended to proceed. Shortly thereafter, the United States Department of Justice, by letter dated February 23, 1998 requested that the ASBCA stay or suspend all proceedings with respect to the appeals relating to the Kwajalein contracts. The Government's attorney in Honolulu filed a motion on March 9, 1998 requesting a stay of proceedings before the Board or outright dismissal of the appeals, based on the request of the Department of Justice.

23.    The interest of the Department of Justice in the matter arose out of an investigation it was conducting of several companies, including defendants, HII and HIE, and others, in respect to contracts, unrelated to the Kwajalein contracts, that had been funded by the United States Agency for International Development and the United States Corps of Engineers, agencies with their headquarters located in Washington, D.C.. Defendant, HII, retained the law firm of Spriggs & Hollingsworth, hereinafter "Spriggs," located in Washington, D.C. to represent it with respect to the Department of Justice's investigation. Commencing in March 1998, and, thereafter, plaintiff

13

cooperated with Spriggs, and kept Spriggs advised of developments in the proceedings on the

Kwajalein appeals before the ASBCA, including providing Spriggs with copies of all documents

filed in the appeals by either the Government or plaintiff on behalf of defendant, HII, and other

documents Spriggs considered pertinent to Spriggs' defense of HII. Defendant, HII, agreed to a

150 day suspension of the appeals pending before the Board and by order dated March 17, 1998,

the Board granted a stay in its proceedings until August 26, 1998. Under date of August 4, 1998,

the Department of Justice requested a further stay by the Board of its proceedings on the

Kwajalein appeals of unstated duration. In response, the Board proposed dismissing the appeals

without prejudice to their reinstatement by either party within three years. Plaintiff drafted a

response opposing such further delay; but counsel to the defendants in connection with the

Department of Justice investigation instructed plaintiff to merely propose that such additional

stay be limited to an additional six months to February 25, 1999. On September 28, 1998 the

Board issued an order dismissing HII's appeals without prejudice; provided the appeals were

reinstated on or before September 29, 2001.


### The Reinstatement of the Appeals

24.     In July 2001, several entities controlled by defendant, Bill Harbert, and Mr. E. Roy

Anderson were indicted in United States District Court in Birmingham, Alabama for alleged

violations of 15 U.S.C. §1 and 18 U.S.C. §371. The alleged violations involved accusations of

bid rigging and conspiracy to defraud the United States in connection with contracts funded by

the Agency for International Development and the United States Army Corps of Engineers in

Egypt. None of the allegations in the indictment related to or concerned the award or

14

performance of the Kwajalein contracts. Trial of the charges was then scheduled for February 2002. A separate *qui tam* action was brought against defendants, HII, HIE BHIC and others in the United States District Court for the District of Colombia in Washington, D.C.. This *qui tam* action is presently pending in that court as Case No. 95CV-1231 (WBB/JMF).

25.    By letter dated August 20, 2001, approximately one month prior to the deadline for reinstatement of the appeals, plaintiff wrote to defendant, Bill Harbert, requesting authorization to proceed with reinstatement of the appeals. No response was received from Mr. Harbert. Accordingly, a further written notice was sent via telefacsimile and U.S. mail to Mr. Harbert under date of September 26, 2001, advising him that plaintiff was concerned with the possible inadvertent forfeiture of the appeals and that it would file an appropriate motion with the Board to request reinstatement of the appeals the next day, unless it received written instructions to the contrary. Having received no instructions to the contrary, plaintiff filed such a motion on September 28, 2001. The Board subsequently notified the parties that the appeals had been reinstated on the Board's docket.

26.    Under date of November 15, 2001, the ASBCA once again suspended all proceedings in the Kwajalein appeals, pending completion of the criminal trial in Birmingham, Alabama then scheduled for February 2002. The Board's order stated that it planned to schedule a hearing on the "assignment of contracts" issue within 90 days of the conclusion of the criminal trial, which ended on February 12, 2002. Upon reinstatement of HII's appeals, the Government's trial attorney had renewed his demand that defendant, HII, provide the Board with proof of plaintiff's authority to represent HII and specifically to have reinstated the appeals. Recognizing that this had become an issue that would have to be addressed, plaintiff in a memorandum, dated March

15

13, 2002 transmitted a draft letter to defendant, Raymond Harbert, that plaintiff proposed to send to the Board in response to a letter from the Government's trial attorney in Honolulu dated February 22, 2002. The draft letter specifically was to advise the Board that HII was the appellant in the Kwajalein appeals and that plaintiff had been acting as HII's attorneys with respect to those appeals since the initial appeals had been filed ten years earlier. In response, plaintiff received a letter dated March 14, 2002, from the Spriggs firm advising that Mr. Joel Piassick, who was unknown to plaintiff, had requested that all future communication with defendant, Raymond Harbert, be sent by plaintiff through the Spriggs firm. The letter from the Spriggs firm did not contend that HII was not properly the appellant in the appeals before the ASBCA, or that plaintiff was not authorized to represent HII in connection with the Kwajalein claims and appeals. From that point, defendant, HII, and the Spriggs firm contended that HII had no interest in the claims and appeals pending before the ASBCA and repeatedly hindered the efforts of plaintiff to successfully prosecute the appeals. This hindrance and interference was manifested in many forms, including demands that HIE and Mr. Bill Harbert enter into onerous agreements, attempts to preclude plaintiff from any contact with the ASBCA without prior written approval from Mr. Piassick and other conditions of representation that if enforced would have made it a practical impossibility for plaintiff to have effectively represented HII before the Board. Most egregiously, defendant, HII, insisted that plaintiff make factual representations to the Board that in plaintiff's view would have resulted in the forfeiture of the appeals.

27.    On April 18, 2002 the ASBCA scheduled an evidentiary hearing on the "assignment of contracts" issue to begin on September 3, 2002. The hearing was subsequently rescheduled at the request of the Government to commence on November 18, 2002.

16

28.    Under date of July 10, 2002 the ASBCA issued an order permitting the Government to take the depositions of Messrs. Bill L. Harbert, Billy L. Harbert, and Raymond J. Harbert and Mr. Lloyd Jones. Plaintiff was able to meet with all these individuals for purposes of assisting them in preparation for their depositions, with the exception of defendant, Raymond Harbert. Plaintiff's attempts to meet with Mr. Harbert to assist him in preparing for his deposition by the Government's trial attorney were rejected.

29.    Defendant, Raymond Harbert's deposition was taken by the Government on August 30, 2002. During his deposition defendant, Raymond Harbert, stated under oath that defendant, HII, was obligated to cooperate with his uncle, defendant, Bill Harbert, and facilitate his efforts in the claim process on the Kwajalein contracts.

30.    Prior to the hearing before the Board on the assignment of contracts issue, at the demand of defendant, HII, a motion was prepared by plaintiff, to substitute BIE for HII as the appellant in the appeals before the ASBCA, and, upon approval by defendant, HII, and the Spriggs firm, was submitted to the Board.

31.    In addition to its insistence that a motion be made to substitute HIE for HII as the appellant in the appeals pending before the Board, defendant, HII, had further advised plaintiff that, in the event such substitution was not granted by the Board, its agreement to permit the appeals to proceed before the Board with HII as the appellant would be conditioned upon an audit by HII of the claims. By letter dated October 11, 2002, plaintiff had previously advised the Spriggs firm that HII should begin such audit so as to assure that an unqualified ratification of the reinstatement of the appeals could be made by HII in the event the motion to substitute BIE was

17

not allowed. No response to plaintiff's letter of October 11, 2002 was ever received and no audit

of the claims by defendant, HII, was ever undertaken.

32.    The hearing before the ASBCA on the assignment of contracts issue was held in the

period from November 18, 2002 through November 20, 2002. Defendant, Raymond Harbert was

called as a witness by the Government, in the course of his examination he was asked repeatedly

by the Administrative Judge of the ASBCA if he ratified the reinstatement of HII's appeals in

September 2001. The significance of and the necessity for such ratification of the reinstatement

of the appeals , as a condition to the continued prosecution of the appeals before the Board, and

the Board's ability to rule on the pending motion to substitute BIE for HII as the appellant, was

explained to defendant, Raymond Harbert, by the Administrative Judge, and he was given the

opportunity to consult with legal counsel before answering. Defendant, Raymond Harbert,

refused to ratify the reinstatement of the appeals, and the Board suspended its proceedings

pending further advice from Mr. Harbert. In his testimony before the Board, defendant,

Raymond Harbert, provided no explanation or justification of his refusal to ratify the

reinstatement of the Kwajalein appeals. Under date of December 20, 2002, the ASBCA issued

an order requiring, HII to either unconditionally ratify the reinstatement of the appeals, or show

cause within 30 days of defendant, HII's, receipt of the order as to why its appeals should not be

dismissed with prejudice. Defendant, HII, made no effort to conduct an audit of the claims in the

interim between the conclusion of the November hearing and the Board's December 20, 2002

order. No response to the Board's order of December 20, 2002 was ever submitted by defendant,

HII, with consequent forfeiture of all the Kwajalein claims and appeals.

33.    Plaintiff performed all that was required of it, or that reasonably could have been done to

18

advance the Kwajalein claims to a successful resolution and favorable recovery on the amounts claimed. Throughout, the entire twelve year period in which plaintiff was engaged in such efforts, it believed that defendant, HII, was the true party in interest, and that it had been engaged by and was representing defendant, HII, as the contracting party with the United States on the Kwajalein contracts. Similarly, plaintiff reasonably believed that the individuals with whom it came in contact, and with whom it was working in the preparation and prosecution of the Kwajalein claims, who represented themselves to be officers and/or authorized representatives of defendant, HII were what they represented themselves to be and had the authority to act on behalf of defendant, HII. Furthermore, defendant, HII, knew or had reason to know that numerous individuals held themselves out to be officers and/or authorized representatives of HII, and knew or should have known that plaintiff was relying on the apparent authority of those individuals to make binding commitments on behalf of HII in respect to plaintiff's services in connection with the Kwajalein claims and appeals. Defendants, HII and Raymond Harbert, knew that plaintiff was actively engaged in the preparation and presentation of claims arising out of the Kwajalein contracts, and had been so engaged for a number of years subsequent to December 1991. However, at no time, did HII or Raymond Harbert ever advise plaintiff that HII had no interest in such claims, or that it had transferred or sold any such interest in the Kwajalein claims to HIE, or that HII was not the party in interest in the same. Similarly, prior to 1997, neither defendant, HII, nor defendant, Raymond Harbert, had ever informed plaintiff that HII had assigned the Kwajalein contracts to HIE, as well as all the other international construction contracts upon which HII had engaged the services of plaintiff to prepare and prosecute claims against the United States of America, or which would require payment by agencies of the United States of America. On the

19

contrary, as stated in Par. 16, above, defendants, HII and Raymond Harbert represented to

plaintiff and the contracting officer of the United States of America that HII was the contractor

with respect to the Kwajalein claims and that it was the party entitled to payment on these claims

by their execution and submission and certification of the claim of January 28, 1994. Plaintiff

substantially performed its obligations and is entitled to payment in accordance with the fee

agreement for its services. At the time, defendant, HII, effectively decided to forfeit the

Kwajalein claims, plaintiff's services were to be paid on the basis of an hourly fee of $150.00,

plus a contingency or success fee of 20% of the first $2,000,000 recovered and 25% of all

amounts recovered in excess of $2,000,000; with all amounts paid for services at the hourly rate

to be deducted from any amount due on the contingency or success fee. The total value of the

Kwajalein claims/appeals, including interest thereon, which were forfeited as a consequence of

defendants' failure to ratify the reinstatement of the appeals, and to permit or authorize plaintiff

to prosecute the same to a conclusion before the ASBCA was $20,116,762.56, and plaintiff is

entitled to payment under the contingency fee agreement on said sum in the amount of

$4,779,830.20.

34.    By letter dated April 11, 2003, plaintiff made demand upon defendant, Bill Harbert, for

payment of such fee in the amount of $4,779,830.20. No payment of the same has been made to

plaintiff.

35.    Under cover of letter dated January 14, 2005, plaintiff made demand upon defendant, HII

for payment of such contingency fee in the amount of $4,779,830.20. No payment has been

made.

20

36.    By failing to make payment to plaintiff defendant, HII has breached the fee agreement with plaintiff entered into by defendant, Bill Harbert on its behalf.

37.    By failing to make payment to plaintiff defendants, Bill Harbert, and BHIC have breached the fee agreement with plaintiff.

38.    Defendants, Raymond Harbert and HII, have tortuously interfered with Plaintiff's efforts to effectively pursue the Kwajalein appeals on behalf of HII and/or BIE.

39.    Should it be determined that defendant, Bill Harbert, had no authority to enter into a fee agreement with plaintiff on behalf of HII, and that BIE was the actual beneficiary of plaintiff's efforts to obtain recovery on behalf of HII, then defendants, BIE and Bill Harbert, will have been unjustly enriched by those efforts and should be required to compensate plaintiff pursuant to the fee agreement, as amended, executed by defendant, Bill Harbert in the names of HII and BHIC.


### Relief Requested

40.    Based upon the foregoing, plaintiff respectfully requests that judgement be entered on its behalf in the amount of $4,779,830.20, plus interest thereon allowed by law, costs and/or such other relief as this Honorable Court determines may be due.


### Jury Demand

Plaintiff, respectfully requests that any trial of this action be conducted before a jury.

WHEREFORE, plaintiff respectfully requests that judgment be entered against defendants as set forth herein.

Respectfully submitted,

King & King, Chartered

By: Christopher M. McNulty

D.C. Bar No. 362550

King & King, Chartered
c/o 3033 N. Dickerson St.
Arlington, Virginia 22207
Tel: (703) 237-4576

22

**SUPERIOR COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **King & King, Chartered,** ) <br> c/o 3033 N. Dickerson Street ) <br> Arlington, Virginia 22207 ) <br>              **Plaintiff** ) <br> ) <br>     **v.** ) <br> ) <br> **Harbert International, Inc.;** ) <br> c/o Mr. Raymond J. Harbert ) <br> 2913 Southwood Road ) <br> Birmingham, Alabama 35223-1232 ) <br> ) <br> **Bilhar International Establishment;** ) <br> c/o Mr. Bill L. Harbert ) <br> 205 Vestavia Circle ) <br> Birmingham, Alabama 35216 ) <br> ) <br> **Bill Harbert International Construction, Inc.;** ) <br> c/o Mr. Bill L. Harbert ) <br> 205 Vestavia Circle ) <br> Birmingham, Alabama 35216 ) <br> ) <br> **Raymond J. Harbert; and** ) <br> 2913 Southwood Road ) <br> Birmingham, Alabama 35223-1232 ) <br> ) <br> **William L. Harbert;** ) <br> 205 Vestavia Circle ) <br> Birmingham, Alabama 35216 ) <br>              **Defendants** ) <br> ) | **Case No. 06-0000367** <br><br> **Notice and Acknowledgment** <br> **of Receipt of Summons** <br> **and Complaint** |

**NOTICE**

To:    Harbert International, Inc.;
          c/o Mr. Raymond J. Harbert
          2913 Southwood Road
          Birmingham, Alabama 35223-1232

The enclosed summons and complaint are served pursuant to Rule 4(c)(2)(C)(i) of the Superior Court Rules Civil Procedure.

You must sign and date the Acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons and Complaint was mailed on January 23, 2006 .

Signature

January 23, 2006
Date of Signature

2

## ACKNOWLEDGMENT OF RECEIPT
### OF SUMMONS AND COMPLAINT

I received a copy of the summons and complaint in the above captioned matter at 2913 Southwood Road, Birmingham, Alabama 35223-1232

_____
Signature

_____
Relationship to Entity/Authority
To Receive Service of Process

_____
Date of Signature

3

**SUPERIOR COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **King & King, Chartered,** )<br>c/o 3033 N. Dickerson Street )<br>Arlington, Virginia 22207 )<br>           **Plaintiff** )<br> )<br>    **v.** )<br> )<br>**Harbert International, Inc.;** )<br>c/o Mr. Raymond J. Harbert )<br>2913 Southwood Road )<br>Birmingham, Alabama 35223-1232 )<br> )<br>**Bilhar International Establishment;** )<br>c/o Mr. Bill L. Harbert )<br>205 Vestavia Circle )<br>Birmingham, Alabama 35216 )<br> )<br>**Bill Harbert International Construction, Inc.;** )<br>c/o Mr. Bill L. Harbert )<br>205 Vestavia Circle )<br>Birmingham, Alabama 35216 )<br> )<br>**Raymond J. Harbert; and** )<br>2913 Southwood Road )<br>Birmingham, Alabama 35223-1232 )<br> )<br>**William L. Harbert;** )<br>205 Vestavia Circle )<br>Birmingham, Alabama 35216 )<br>           **Defendants** )<br> ) | **Case No. 06-0000367**<br><br>**Notice and Acknowledgment<br>of Receipt of Summons<br>and Complaint** |

**NOTICE**

To:    Bill Harbert International Construction, Inc.
        c/o Mr. Bill L. Harbert
        205 Vestavia Circle
        Birmingham, Alabama 35216

## SUPERIOR COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **King & King, Chartered,** <br> c/o 3033 N. Dickerson Street <br> Arlington, Virginia 22207 <br>              **Plaintiff** <br><br>      **v.** <br><br> **Harbert International, Inc.;** <br> c/o Mr. Raymond J. Harbert <br> 2913 Southwood Road <br> Birmingham, Alabama 35223-1232 <br><br> **Bilhar International Establishment;** <br> c/o Mr. Bill L. Harbert <br> 205 Vestavia Circle <br> Birmingham, Alabama 35216 <br><br> **Bill Harbert International Construction, Inc.;** <br> c/o Mr. Bill L. Harbert <br> 205 Vestavia Circle <br> Birmingham, Alabama 35216 <br><br> **Raymond J. Harbert; and** <br> 2913 Southwood Road <br> Birmingham, Alabama 35223-1232 <br><br> **William L. Harbert;** <br> 205 Vestavia Circle <br> Birmingham, Alabama 35216 <br>             **Defendants** | **Case No. 06-0000367** <br><br> **Notice and Acknowledgment of Receipt of Summons and Complaint** |

## NOTICE

To:     Bilhar International Establishment
        c/o Mr. Bill L. Harbert
        205 Vestavia Circle
        Birmingham, Alabama 35216

## SUPERIOR COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **King & King, Chartered,**<br>c/o 3033 N. Dickerson Street<br>Arlington, Virginia 22207<br><div align="right">**Plaintiff**</div><br><div align="center">v.</div><br>**Harbert International, Inc.;**<br>c/o Mr. Raymond J. Harbert<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>**Bilhar International Establishment;**<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>**Bill Harbert International Construction, Inc.;**<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>**Raymond J. Harbert; and**<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>**William L. Harbert;**<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><div align="right">**Defendants**</div> | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 06-0000367**<br><br>**Notice and Acknowledgment<br>of Receipt of Summons<br>and Complaint** |

## NOTICE

> To:    Mr. Raymond J. Harbert
>        2913 Southwood Road
>        Birmingham, Alabama 35223-1232

## SUPERIOR COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| King & King, Chartered,<br>c/o 3033 N. Dickerson Street<br>Arlington, Virginia 22207<br><br>        **Plaintiff**<br><br>    **v.**<br><br>Harbert International, Inc.;<br>c/o Mr. Raymond J. Harbert<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>Bilhar International Establishment;<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>Bill Harbert International Construction, Inc.;<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>Raymond J. Harbert; and<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>William L. Harbert;<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>        **Defendants** | Case No. 06-0000367<br><br>Notice and Acknowledgment<br>of Receipt of Summons<br>and Complaint |

## NOTICE

To:    Mr. Bill L. Harbert
           205 Vestavia Circle
           Birmingham, Alabama 35216



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

KING AND KING CHARTERED

Vs.                                                    C.A. No.        2006 CA 000367 B

HARBERT INTERNATIONAL, INC

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge ANNA BLACKBURNE-RIGSBY
Date:   January 20, 2006
Initial Conference: 9:30 am, Friday, April 21, 2006
Location:   Courtroom 519
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

King & King, Chartered.

*Plaintiff*

06-0000367

vs.

Civil Action No. _____

Herbert International, Inc.

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Christopher McNulty

Name of Plaintiff's Attorney

3055 N. Dickerson St.

Address

Arlington Va. 22207

703-237-4576

Telephone

By _____
Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT  IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ES-TATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT  IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly con-tact one of the offices of the Legal Aid Society (624-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue. N.W., for more information concerning places where you may ask for such help

CA Form 1

# Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

King & King, Charted

*Plaintiff*

06-0000367

vs.

Civil Action No. _____

B/I Herbert International Cost, Inc

*Defendant*

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Christopher McNulty

Name of Plaintiff's Attorney

3033 N. Dickerson St.

Address

Arlington, Va. 22207

703-237-4576

Telephone

*Clerk of the Court*

By _____

Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-450/May 03

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

King & King, Chartered                    *Plaintiff*

06-0000367

vs.

Civil Action No. _____

B. Han International Est.

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Christopher McNulty
Name of Plaintiff's Attorney

3033 N Dickerson St.
Address
Arlington, Va.    22207

703 - 237 - 4576
Telephone

By _____
Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-4590(Rev. 03)

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

King & King, Charted

*Plaintiff*

06-0000367

vs.

Civil Action No. _____

Raymond J. Harbert

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Christopher McNulty

Name of Plaintiff's Attorney

3033 N. Dickerson St.

Address

Arlington, Va. 22207

703 - 237 - 4576

Telephone

By _____

Deputy Clerk

Date _____



**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

King & King, Cleveland    *Plaintiff*

06—0000367

vs.

William L Herbert

Civil Action No. _____

*Defendant*

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Christopher McNulty
Name of Plaintiff's Attorney

3033 N Dickerson street
Address
Arlington, Va. 22207

703. 237. 4576
Telephone

*Clerk of the Court*

By _____
            Deputy Clerk

Date _____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-450(Rev) 03

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal was sent, via overnight mail, on this **23rd day of February, 2006**, to:

> Christopher M. McNulty
> King & King, Chartered
> c/o 3033 N. Dickerson St.
> Arlington, Virginia 22207
>
> *Attorney for Plaintiff*

_____
Justin O. Kay

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KING & KING, CHARTERED,          )
c/o 3033 N. Dickerson Street     )
Arlington, Virginia 22207        )
                                 )
                  **Plaintiff,**    )
                                 )
    v.                          )
                                 )
HARBERT INTERNATIONAL, INC.;     )
c/o Mr. Raymond J. Harbert       )
2913 Southwood Road              )
Birmingham, Alabama 35223-1232   )
                                 )
BILHAR INTERNATIONAL             )
ESTABLISHMENT;                   )
c/o Mr. Bill L. Harbert          )
205 Vestavia Circle              )      **Civil Action No. _____**
Birmingham, Alabama 35216        )
                                 )
BILL HARBERT INTERNATIONAL       )
CONSTRUCTION, INC.;              )
c/o Mr. Bill L. Harbert          )
205 Vestavia Circle              )
Birmingham, Alabama 35216        )
                                 )
RAYMOND J. HARBERT; and          )
2913 Southwood Road              )
Birmingham, Alabama 35223-1232   )
                                 )
BILL L. HARBERT                  )
205 Vestavia Circle              )
Birmingham, Alabama 35216        )
                                 )
             **Defendants.**    )

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1(a) of the Federal Rules of Civil Procedure, Defendant Harbert

International, Inc., by and through counsel, hereby discloses the following:

1.    Harbert International, Inc., is a wholly owned subsidiary of Harbert Corporation.

2.    No publicly held corporation owns 10% or more of Harbert International, Inc.'s stock.

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel of record for Harbert International, Inc., certify that to the best of my knowledge and belief, there are no parent companies, subsidiaries or affiliates of Harbert International, Inc. which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record for Harbert International, Inc.


Respectfully submitted,

By: _____
    Michael J. McManus    (#262832)
    Jeffrey J. Lopez       (#453052)
    DRINKER BIDDLE & REATH LLP
    1500 K Street, N.W.
    Suite 1100
    Washington, D.C. 20005
    Telephone:  (202) 842-8800
    Facsimile:  (202) 842-8465

    Counsel for Harbert International, Inc.

February 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Corporate Disclosure Statement was sent, via overnight mail, on this **23rd day of February, 2006**, to:

Christopher M. McNulty
King & King, Chartered
c/o 3033 N. Dickerson St.
Arlington, Virginia 22207

*Attorney for Plaintiff*


Justin O. Kay

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KING & KING, CHARTERED,<br>c/o 3033 N. Dickerson Street<br>Arlington, Virginia 22207<br><br>               **Plaintiff,**<br><br>   v.<br><br>HARBERT INTERNATIONAL, INC.;<br>c/o Mr. Raymond J. Harbert<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>BILHAR INTERNATIONAL<br>ESTABLISHMENT;<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>BILL HARBERT INTERNATIONAL<br>CONSTRUCTION, INC.;<br>c/o Mr. Bill L. Harbert<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>RAYMOND J. HARBERT; and<br>2913 Southwood Road<br>Birmingham, Alabama 35223-1232<br><br>BILL L. HARBERT<br>205 Vestavia Circle<br>Birmingham, Alabama 35216<br><br>              **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1(a) of the Federal Rules of Civil Procedure, Defendants Bilhar

International Establishment ("Bilhar") and Bill Harbert International Construction, Inc.

("BHIC"), by and through counsel, hereby disclose the following:

1.    Bilhar is wholly owned by Defendant Bill L. Harbert, and individual.  Therefore, Bilhar has no parent company and no publicly held corporation owns 10% or more of Bilhar's stock.

2.    BHIC also has no parent company and no publicly held corporation owns 10% or more of BHIC's stock.

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel of record for Bilhar International Establishment and Bill Harbert International Construction, Inc., certify that to the best of my knowledge and belief, there are no parent companies, subsidiaries or affiliates of Bilhar International Establishment and/or Bill Harbert International Construction, Inc. which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record for Bilhar International Establishment and Bill Harbert International Construction, Inc.

Respectfully submitted,

By: _Dennis C. Ehlers/pgs_

Laurence Schor (#11484)
Dennis C. Ehlers (#478721)
McManus, Schor, Asmar & Darden, LLP
1155 15th Street, N.W.
Suite 900
Washington, D.C. 20005
Telephone:  (202) 296-9260
Facsimile:  (202) 659-3732

February 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Corporate Disclosure Statement was sent, via overnight mail, on this **23rd day of February, 2006**, to:

> Christopher M. McNulty
> King & King, Chartered
> c/o 3033 N. Dickerson St.
> Arlington, Virginia 22207.
>
> *Attorney for Plaintiff*

Justin O. Kay