IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KING & KING, CHARTERED, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | **Civil Action No. 1:06-cv-00324 (JDB)** |
| HARBERT INTERNATIONAL, INC., | ) | |
| *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION TO DISMISS AND MEMORANDUM OF LAW OF DEFENDANTS HARBERT INTERNATIONAL INCORPORATED AND RAYMOND HARBERT

Defendants Harbert International, Inc. ("HII") and Raymond J. Harbert ("Raymond Harbert" or "Mr. Harbert"), by and through counsel, hereby respectfully move this Court to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), the Complaint of Plaintiff King & King, Chartered ("King & King") against HII and Raymond Harbert in the above captioned action for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Plaintiff, a law firm, alleges that it was retained in 1990 by Bill L. Harbert ("Bill Harbert") to represent HII in conjunction with the preparation of legal claims for compensation for work performed under a series of government contracts ("the Kwajalein contracts") awarded to HII by the United States government. See Complaint ¶ 13 at 6–7. Bill Harbert was President of HII until July 1990 and Vice Chairman of its Board until 1992. Id. ¶¶ 2, 6 at 2, 3. In December 1991, allegedly unbeknownst to Plaintiff, the Kwajalein contracts were assigned by HII to Harbert International Establishment ("HIE"), now Defendant Bilhar International

Establishment ("BIE"), with the consent of the Government's Contracting Officer, provided that HII remained contractually liable to the government. Id. ¶ 21 at 12. Plaintiff allegedly continued to perform legal services on behalf of HII throughout 1992 and 1993. Id. ¶ 16 at 8-9.

In January 1994, a claim was filed on behalf of HII for $12,856,605 plus interest, see id. ¶ 16 at 9, which was eventually docketed before the Armed Services Board of Contract Appeals (ASBCA). Id. ¶ 14 at 8. According to Plaintiff, counsel for the United States vigorously opposed the claim, ultimately challenging the legality of an assignment of the Kwajalein contracts from HII to BIE. It was at that time, in February 1997, that Plaintiff claims it first learned of the assignment of the contracts. Id. ¶ 20 at 12.

Plaintiff asserts that its investigation of any potential illegality of the assignment of the Kwajalein contracts indicated that the contentions of the United States attorney were without merit, so informed Bill Harbert (who was no longer was associated with HII) and the ASBCA, and sought an early hearing before the ASBCA. Id. ¶ 21 at 12–13. Prior to the hearing, the United States Department of Justice ("DOJ") requested a stay of all proceedings based on criminal investigations of several government contractors, including HII and HIE/BIE. Id. ¶¶ 22–23 at 14. Following a request for a further stay by the government, on September 28, 1998, the ASBCA instead dismissed the appeal without prejudice, permitting reinstatement within three years. Id. ¶ 23 at 14.

In August 2001, Plaintiff sent a letter to Bill Harbert requesting authorization to reinstate the appeals on the claim before the ASBCA. Id. ¶ 25 at 15. No authorization was provided by Bill Harbert. Id. Plaintiff did not seek authorization from defendant HII. Thereafter, Plaintiff sent Bill Harbert a second letter that stated that Plaintiff would move to reinstate the appeals without authorization unless it "received written instructions to the contrary." Id. ¶ 25 at 15.

The unauthorized motion for reinstatement was thereafter filed and the appeals were reinstated. Id.

Following yet another suspension of proceedings, the United States demanded proof that Plaintiff was authorized to represent HII and reinstate the appeals. Id. ¶ 26 at 15. Forced to present some proof of authorization from HII, Plaintiff finally communicated with HII in March, 2002, sending Raymond Harbert – HII's President since July 1990 – a draft submission to the ASBCA purporting to represent that Plaintiff "had been acting as HII's attorneys" throughout the appeal. Id. ¶ 26 at 15–16. Raymond Harbert did not sign the draft submission and HII insisted that Plaintiff's future communications on the matter be made only through HII's attorneys. Plaintiff contends that "[f]rom that point, defendant, HII . . . contended that HII had no interest in the claims and appeals pending before the ASBCA and repeatedly hindered the efforts of plaintiff to successfully prosecute the appeals." Id. ¶ 26 at 16. Plaintiff claims that "[t]his hindrance and interference was manifested in many forms," such as attempts by HII to preclude Plaintiff from any further unauthorized contact with the ASBCA without prior written approval. Id.

The ASBCA eventually held an evidentiary hearing from November 18, 2002 through November 20, 2002, at which Raymond Harbert was called by the government to testify, *inter alia*, about the reinstatement of the appeal. Id. ¶ 32 at 18. Because neither Raymond Harbert nor HII had authorized Plaintiff to seek reinstatement of the appeal, the ASBCA judge asked Mr. Harbert whether HII ratified Plaintiff's reinstatement actions. Mr. Harbert refused to ratify the unauthorized reinstatement of the appeals by Plaintiff. Id. Thereafter, the appeals were dismissed. Id.

According to Plaintiff:

> At the time, Defendant, HII, effectively decided to forfeit the Kwajalein claims, plaintiff's services were to be paid on the basis of an hourly fee of $150.00, plus a contingency or success fee of 20% of the first $2,000,000 recovered and 25% of all amounts recovered in excess of $2,000,000; with all amounts paid for services at the hourly rate to be deducted from any amount due on the contingency or success fee.

Id. ¶ 33 at 20. Plaintiff claims the total value of the appeals was $20,116,762.56 at the time of forfeiture, and that Plaintiff is "entitled to payment under the contingency fee agreement on said sum in the amount of $4,779,830.20."[1] Id. Plaintiff asserts claims of breach of contract against HII, Bill Harbert and Bill Harbert International Construction, Inc., tortious interference with "Plaintiff's efforts to effectively pursue the Kwajalein appeals" against Raymond Harbert and HII, and unjust enrichment against Bill Harbert and BIE. Id. ¶¶ 36–39 at 21.

## ARGUMENT

### I.    INTRODUCTION AND LEGAL STANDARD

Plaintiff asserts a single cause of action against Raymond Harbert for tortious interference with contract and asserts two separate causes of action against HII for 1) breach of contract and 2) tortious interference with contract. Id. Each of these claims should be dismissed for three independent reasons. First, all of Plaintiff's claims are time barred because the suit was not filed within the applicable three year limitations period. Second, the breach of contract claim against HII fails because the condition precedent, as alleged in the Complaint, of any contractual obligation on the part of HII (or anyone else) to pay a contingent fee to King & King was never satisfied, as no monetary recovery from Plaintiff's work on the Kwajalein contracts was ever made. Third, even if the contract claim were timely filed and adequately pled, Plaintiff's

---

[1] Presumably this calculation takes into account payments made to Plaintiff on an hourly basis during the appeal.

4

allegations are legally insufficient to establish a claim for tortious interference against HII or Raymond Harbert.

The standards by which this Court evaluates a motion to dismiss pursuant to Rule 12(b)(6) are well established. Cowin v. Bresler, 741 F.2d 410, 412 n.3 (D.C. Cir. 1984). Dismissal is appropriate if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1260 (D.C. Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "To that end, the complaint is construed liberally in the plaintiffs' favor, and [the court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Williams 389 F.3d at 1257 (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997)). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In this diversity action, the court should apply District of Columbia law.

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Under District of Columbia law, the period of limitations for actions in contract is three years. 12 D.C. Code § 301(7); Plan Comm. v. PricewaterhouseCoopers, LLP, 2005 U.S. Dist. LEXIS 18889, at *40–44 (D.D.C. 2005). Similarly, "[t]he cause of action for tortious interference with contract is subject to a three-year statute of limitations." Beard v. Edmondson

5

& Gallagher, 790 A.2d 541, 546 (D.C. 2002) (citing D.C. Code § 12-301 (8) (2001)). Plaintiff's suit was filed on January 20, 2006; consequently, to conform to the requirements of the statute of limitations for both breach of contract and tortious interference, the injury alleged must have occurred no earlier than January 20, 2003. See Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP, 2002 U.S. Dist. LEXIS 4976, at *8 (D.D.C. 2002). In this case, any cause of action for breach of contract or tortious interference accrued before January 20, 2003; accordingly, Plaintiff's claims should be dismissed.

### A. Any alleged breach of contract by HII occurred before January 20, 2003.

"'Generally, accrual for contract cases occurs when the contract is first breached.'" Plan Comm., 2005 U.S. Dist. LEXIS 18889, at *40–44 (quoting Capitol Place I Assocs. L.P. v. George Hyman Constr. Co., 673 A.2d 194, 198 (D.C. 1996)). "Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action." Cevenini v. Archbishop of Washington, 707 A.2d 768, 771 (D.C. 1998).

Plaintiff's breach of contract claim against HII alleges that HII's decision not to ratify the reinstatement of the appeal deprived Plaintiff of its opportunity to recover the contingent fee. However, even if HII's decision not to ratify were considered a breach of the contract, that decision was made (and Plaintiff learned of it) no later than the November, 2002 hearing at which Raymond Harbert "refused to ratify the reinstatement of the appeals." Complaint ¶ 32 at 18. Indeed, according to the Complaint, HII took no further action after the November 2002 hearing.

Under District of Columbia law, an action for breach of contract may accrue where one party has repudiated the contract. "For a repudiation of a contract by one party to be sufficient to give the other party the right to recover for breach, the repudiating party must have

6

communicated, by word or conduct, unequivocally and positively its intention not to perform." Keefe Co. v. Americable Int'l, Inc., 755 A.2d 469, 475 (D.C. 2000) (quoting Order of AHEPA v. Travel Consultants, Inc., 367 A.2d 119, 125 (D.C. 1976), cert. dismissed, 434 U.S. 802 (1977)). As alleged in the Complaint, Raymond Harbert unequivocally indicated his refusal to ratify the reinstatement of the appeals during the ASBCA hearing. Any purported breach occurred upon the making of this unequivocal statement; the cause of action therefore accrued no later than November 2002, well before January 20, 2003. Plaintiff's claim for breach of contract against HII is therefore time barred.

**B.    Any tortious interference by HII or Raymond Harbert occurred before January 20, 2003.**

"Ordinarily, a plaintiff's cause of action accrues at the time he suffers the injury alleged." Nelson v. American Nat'l Red Cross, 26 F.3d 193, 196 (D.C. Cir. 1994) (quoting Burns v. Bell, 409 A.2d 614, 615 (D.C. 1979)). "'Where the fact of an injury can be readily determined, a claim accrues at the time that the plaintiff suffers an alleged injury.'" Plan Comm., 2005 U.S. Dist. LEXIS 18889, at *41 (quoting Hendel v. World Plan Exec. Council, 705 A.2d 656, 660 (D.C. 1997)). "Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action." Cevenini, 707 A.2d at 771.

According to the complaint, Plaintiff first became aware that HII had assigned the Kwajalein contracts to HIE following "demand by counsel for the Government in Honolulu in February 1997 for the production of any such assignment documents." Complaint ¶ 20 at 12. In August and September 2001, Plaintiff received no response from Bill Harbert to its request for authorization to proceed with the appeals. Id. ¶ 25 at 15. In March 2002, Plaintiff was informed by HII that all future communication with Raymond Harbert must be made through counsel. Id.

¶ 26 at 16. According to Plaintiff, "from that point, defendant, HII . . . repeatedly hindered the efforts of plaintiff to successfully prosecute the appeals." Id. According to the Complaint, HII's and Raymond Harbert's "hindrance and interference was manifested in many forms." Id. Finally, at a hearing in late November 2002 regarding the Kwajalein contracts, Defendant Raymond Harbert "refused to ratify the reinstatement of the appeals." Id. ¶ 32 at 18.

Under District of Columbia law, "a plaintiff cannot wait until he has every fact but must sue when he has sufficient information establishing a legal wrong." Thompson, 2002 U.S. Dist. LEXIS 4976, at *8 (citing Cevenini, 707 A.2d at 771 (plaintiff must sue when she has (1) knowledge of an injury, (2) its cause, and (3) some evidence of wrongdoing)). In this case, Plaintiff had sufficient information to pursue a claim for an alleged legal wrong throughout most of 2002. Indeed, Plaintiff could not possibly have been unaware of the accrual of a cause of action, as indicated by the detail with which Plaintiff characterizes the continuous nature of the alleged "interference" by HII and Raymond Harbert. See Complaint ¶¶ 26–28 & 31–32 at 15–18. Plaintiff most certainly had sufficient information after Raymond Harbert's statements before the ASBCA in late November 2002, which effectively terminated the appeal. None of the allegedly tortious actions by HII or Raymond Harbert took place after November 2002. Accordingly, Plaintiff's claims for tortious interference are time barred and must be dismissed.

**III.    PLAINTIFF HAS NOT ADEQUATELY ALLEGED THAT HII BREACHED THE CONTINGENCY FEE AGREEMENT.**

Under District of Columbia law, "breach is an unjustified failure to perform all or any part of what is promised in a contract entitling the injured party to damages." Fowler v. A & A Co., 262 A.2d 344, 347 (D.C. 1970) (internal citations omitted). As alleged by Plaintiff, Defendant HII retained plaintiff under an hourly rate and a contingent fee agreement, Complaint

¶ 33 at 20. There is no allegation that Plaintiff was not paid for its work according to the hourly rate provision.

A contingent fee is "[a] fee charged for a lawyer's services *only if the lawsuit is successful* or is favorably settled out of court." <u>Black's Law Dictionary</u> (8th ed. 2004) (emphasis added). According to the Complaint, Defendant HII promised to pay Plaintiff a percentage of any recovery from the Kwajalein claims if the lawsuit was successful. Complaint ¶ 33 at 20. A successful lawsuit and recovery on the Kwajalein claims was therefore an express condition precedent to a payment of any contingent fees by HII to Plaintiff. Plaintiff does not (and indeed, cannot) allege that this condition precedent was met. Absent recovery by HII on the claims, Plaintiff had no right to payment.

Plaintiff's claim that "Plaintiff substantially performed its obligations and is entitled to payment in accordance with the fee agreement for its services," Complaint ¶ 33 at 20, misses the point of the contingency. The precondition of a lawyer receiving a contingent fee is a recovery by the client through settlement or judgment, not simply that the lawyer did its job in representing the client. Similarly, Plaintiff's claim that "Plaintiff performed all that was required of it, or that reasonably could have been done to advance the Kwajalein claims to a successful resolution and favorable recovery on the amounts claimed," <u>id.</u> at 18–19, ignores the precondition of recovery by the client. It is certainly true that many a lawyer operating under a contingent fee agreement has "performed all that was required of it," only to have his client lose his case for one reason or another. In such cases, no contingent fee is paid to the lawyer.

Plaintiff implies in the Complaint that this case is different from one that was simply lost, suggesting that HII had no right not to choose not to ratify the reinstatement of the claims and in doing so breached the fee agreement. District of Columbia law is to the contrary. As legal

counsel to HII, Plaintiff was bound to abide by HII's decision regarding the objectives of representation. See District of Columbia Rules of Prof'l Conduct R. 1.2(a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation."). According to the Complaint, HII ultimately decided to "forfeit the Kwajalein claims." Complaint ¶ 33 at 20. Plaintiff, however, had no right to reinstate the appeals and pursue the claims in 2001 absent consent from its client, HII. Indeed, Plaintiff's desire to pursue the Kwajalein claims in the face of the contrary intentions of HII created a plain conflict of interest: "a lawyer shall not represent a client with respect to matter if . . . [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by . . . the lawyer's own financial, business, property, or personal interests." District of Columbia Rules of Prof'l Conduct R. 1.7(b). While an ultimate recovery by HII on the Kwajalein claims may have entitled Plaintiff to a contingent fee, pursuit of that fee was not permissible if it was contrary to the desires of the client.

In the end, Plaintiff's claim that it is entitled to a contingent fee payment even though the contingency went unmet turns the law on its head by subverting the client's interests to the interests of its lawyer. There is no legal support for this radical position. Plaintiff's claim for breach of contract against HII is not actionable and should therefore be dismissed.

## IV.    THE ALLEGATIONS IN THE COMPLAINT DO NOT SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE BY HII OR RAYMOND HARBERT.

Plaintiff alleges HII and Raymond Harbert tortuously (sic) interfered "with Plaintiff's efforts to effectively pursue the Kwajalein appeals." Complaint ¶ 33 at 21. Under District of Columbia law, the elements of tortious interference with contract are 1) existence of a contract, 2) knowledge of the contract, 3) intentional procurement of its breach or termination by the defendant, and 4) damages resulting there from. See Sturdza v. United Arab Emirates, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (quoting Sorrells v. Garfinkel's, Brooks Bros., Miller & Rhoads,

Inc., 565 A.2d 285, 289 (D.C. 1989)).[2]  Plaintiff has not alleged facts supporting the elements of

a prima facie case of tortious interference against either HII or Raymond Harbert.  Plaintiff's

claims for tortious interference should therefore be dismissed.

### A.    There was no breach of contract.

One necessary element of a tortious interference claim is the intentional procurement of

breach of contract.  See Sturdza 281 F.3d at 1305.  In this case, however, defendants never

breached the fee agreement. As noted in Part III, *supra*, a successful lawsuit and recovery on the

Kwajalein claims was an express condition precedent to a payment of any contingent fees by HII

to Plaintiff.  Plaintiff has no right to payment because, as alleged in the Complaint, the condition

precedent to Plaintiff's right to payment was never satisfied.  Defendant HII consequently has no

duty to pay Plaintiff.

Moreover, Plaintiff's own allegations recognize that HII had an absolute right not to

reinstate the appeals.  Were it otherwise, Plaintiff would not have first sent a letter requesting

authorization to reinstate the appeal and later indicated that it would move to reinstate the appeal

without authorization, unless it "received written instructions to the contrary."  Id. ¶ 25 at 15.

Plainly, had such written instructions been received, the appeal would have remained dismissed

and no issue regarding ratification would have ever arisen.  Plaintiff's unilateral decision to

reinstate the appeals cannot be used to place Raymond Harbert or HII in a position whereby a

---

[2] The District of Columbia also recognizes an action for tortious interference with prospective advantage or business expectancy.  See Riggs v. Home Builders Inst., 203 F. Supp. 2d 1, 24 (D.D.C. 2002).  The language of the Complaint is unclear as to which tort is being alleged. However, as Plaintiff's efforts to pursue the appeals arose out of its alleged fee agreement with defendants HII and Bill Harbert International Construction, Inc., it would appear that such claim is properly construed as tortious interference with contract.

simple decision to exercise a right to abandon the claims exposes Mr. Harbert or HII to tort liability.

At bottom, there was no breach of contract and therefore, HII and Raymond Harbert cannot be held liable for procuring a breach.

**B.     As a party to the alleged contract, HII cannot tortiously interfere with its own contract.**

A fundamental requirement of any claim for tortious interference is that the accused party must be a stranger to the contract:

> One who intentionally and improperly interferes with the performance of a contract . . . *between another and a third person* by inducing or otherwise causing *the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of *the third person* to perform the contract.

Curaflex Health Servs. v. Larry M. Bruni, M.D., P.C., 899 F. Supp. 689, 694 (D.D.C. 1995) (quoting Sorrells 565 A.2d at 290 (D.C. 1989) (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 766 (1979))). In this case, Plaintiff alleges in the Complaint that it was retained by HII, and that HII was party to a fee agreement with Plaintiff. See id. ¶¶ 13 at 7, 36 at 21. Accepting for the purposes of this motion that an agreement did exist between HII and Plaintiff, there are no circumstances under which HII could tortiously interfere with that agreement. Plaintiff's claim against HII for tortious interference should therefore be dismissed.

Similarly, Raymond Harbert's actions in this case were on behalf of HII, not made in his personal capacity. Indeed, a corporation only acts through its officers. Raymond Harbert's testimony and decision not to ratify the reinstatement of the appeal were the actions of HII, not of Mr. Harbert personally. Plaintiff cannot end run the requirement that one who tortiously interferes with a contract must be a third party by claiming that Mr. Harbert, HII's President, tortiously interfered with HII's contract.

**C.** **As the President of HII, Raymond Harbert was privileged to induce HII to breach its alleged contract with Plaintiff.**

In the District of Columbia, "[a]s a matter of law, 'a[] [corporate] officer is privileged to induce the corporation to violate a contractual relation . . . provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interest of the corporation.'" <u>Curaflex Health Servs.</u> 899 F. Supp. at 695 (quoting <u>9 to 5 Fashions, Inc. v. Spurney</u>, 538 So. 2d 228, 231 (La. 1989)). Moreover, "[s]o long as a corporate officer is acting in the corporation's interests, and is acting within the scope of his authority, his personal motivation is irrelevant, even if his actions happen to benefit himself or if he acts with ill will towards another." <u>Curaflex Health Servs.</u>, 899 F. Supp. at 696. "The public policy behind this approach is sound. So long as corporate officers act in pursuit of what they faithfully believe to be their corporation's best interests, they should not be deterred by the threat of personal liability." <u>Id.</u> (internal citations omitted).

**1.** **There is no allegation in the Complaint that Raymond Harbert exceeded the scope of his authority**

Raymond Harbert is the President of HII. Complaint ¶ 16 at 8–9. There is no allegation in the Complaint that Mr. Harbert, as President of HII, exceeded his authority by refusing to ratify the reinstatement of the appeals before the ASBCA. Indeed, Plaintiff's cause of action for breach of contract against HII is predicated entirely on Mr. Harbert acting pursuant to his authority to bind HII by refusing to ratify the reinstatement of the appeals brought in HII's name.

**2.** **There is no allegation that Raymond Harbert knowingly committed acts adverse to the interest of HII.**

There is no allegation in the Complaint that Raymond Harbert committed acts adverse to the interests of HII by refusing to ratify the reinstatement of the appeals before the ASBCA. Rather, Plaintiff's Complaint is premised on the fact that Mr. Harbert's actions were ultimately

13

adverse to the interests of Plaintiff.  Indeed, as HII had assigned any interest in the underlying contracts or proceeds from the appeals to BIE, no result in the appeal would have been materially adverse to HII.

### CONCLUSION

For the foregoing reasons, Defendants HII and Raymond Harbert respectfully request that Plaintiff's claims against them be dismissed pursuant to Rule 12(b)(6).

### REQUEST FOR ORAL HEARING

Pursuant to Local Civil Rules 47(f) and 78.1, Defendant HII and Defendant Raymond Harbert hereby respectfully request this Court to schedule an oral hearing on this motion.

Respectfully Submitted

HARBERT INTERNATIONAL, INC.
RAYMOND J. HARBERT

By:_____/s/_____

Michael J. McManus    (#263832)
Jeffrey J. Lopez        (#453052)
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, D.C. 20005
Telephone:  (202) 842-8800
Facsimile:  (202) 842-8465

*Attorneys for Harbert International, Inc. and Raymond J. Harbert*

March 2, 2006

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss was sent, via overnight mail, on this **2nd day of March, 2006**, to:

Christopher M. McNulty
King & King, Chartered
c/o 3033 N. Dickerson St.
Arlington, Virginia 22207

_____/s/_____
Justin O. Kay