## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KING & KING, CHARTERED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Civil Action No. 1:06-cv-00324 (JDB)** |
| HARBERT INTERNATIONAL, INC., | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW OF DEFENDANTS HARBERT INTERNATIONAL INCORPORATED AND RAYMOND HARBERT

Defendants Harbert International, Inc. ("HII") and Raymond J. Harbert ("Raymond Harbert" or "Mr. Harbert"), by and through counsel, hereby respectfully move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), to dismiss the claims in the First Amended Complaint against HII and Raymond Harbert for failure to state a claim upon which relief can be granted.[1]

---

[1] On March 2, 2006, HII and Raymond Harbert filed a motion to dismiss Plaintiffs' initial Complaint. On March 12, 2006, Plaintiffs filed a response to that motion and also simultaneously filed the First Amended Complaint, which contained certain new allegations that sought to address issues raised in the original motion to dismiss. Because the Amended Complaint does not incorporate the initial Complaint, it supersedes the initial Complaint. El-Hadad v. Embassy of the U.A.E., 69 F. Supp. 2d 69, 72 (D.D.C. 1999) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") Therefore, the Amended Complaint moots HII and Mr. Harbert's initial motion, which sought dismissal of the now inoperative Complaint, and moots Plaintiff's response. See id. ("It follows that a motion to dismiss a superseded complaint has no legal effect.")

## STATEMENT OF FACTS

Plaintiff King & King, Chartered ("King & King"), a law firm, alleges that it was retained in 1990 by Defendant Bill L. Harbert ("Bill Harbert") to represent HII in conjunction with the preparation of legal claims for compensation for work performed under a series of government contracts ("the Kwajalein contracts") awarded to HII by the United States government. See First Amended Complaint ¶ 13 at 6–7. Bill Harbert was President of HII until July 1990 and Vice Chairman of its Board of Directors until 1992. Id. ¶¶ 2, 6 at 2, 3. In December 1991, allegedly unbeknownst to Plaintiff, the Kwajalein contracts were assigned by HII to Harbert International Establishment ("HIE"), now Defendant Bilhar International Establishment ("BIE"), a company that was 50% owned by Bill Harbert. Id. ¶ 21 at 12. The assignment was made with the consent of the Government's Contracting Officer, provided that HII remained contractually liable to the government. Id. Plaintiff allegedly continued to perform legal services related to the Kwajalein contracts throughout 1992 and 1993. Id. ¶ 16 at 8–9.

In January 1994, HII submitted a claim for $12,856,605 plus interest, id. ¶ 16 at 8, which was eventually docketed before the Armed Services Board of Contract Appeals ("ASBCA"). Id. ¶ 14 at 7. According to Plaintiff, counsel for the United States vigorously opposed the claim, including ultimately challenging the legality of the assignment of the Kwajalein contracts from HII to BIE. Id. ¶ 17 at 9–10. It was at that time, in February 1997, that Plaintiff claims it first learned of the contractual assignment. Id. ¶ 20 at 11.

Thereafter, Plaintiff investigated the assignment of the Kwajalein contracts and concluded that the legal position of the United States was without merit, so informed Bill Harbert (who was no longer was associated with HII) and the ASBCA, and sought an early hearing

before the ASBCA.  Id. ¶ 21 at 11–12.  Prior to the hearing, the United States Department of Justice ("DOJ") requested a stay of all proceedings because of ongoing criminal investigations of several government contractors, including HII and HIE/BIE.  Id. ¶¶ 22–23 at 12–13.  Following a request for a further stay by the government, on September 28, 1998, the ASBCA instead chose to dismiss the appeal without prejudice, permitting reinstatement of the claim within three years. Id. ¶ 23 at 13–14.

In August 2001, Plaintiff sent a letter to Bill Harbert requesting authorization to reinstate the appeal before the ASBCA.  Id. ¶ 25 at 14.  No authorization was provided by Bill Harbert. Id.  Plaintiff did not seek authorization from defendant HII.  See id.  Two days before the deadline for the reinstatement of the appeals, Plaintiff sent Bill Harbert a second letter that stated that Plaintiff would move to reinstate the appeals without authorization unless it "received written instructions to the contrary."  Id.  The unauthorized motion for reinstatement was thereafter filed and the appeals were reinstated.  Id. at 14–15.

Following yet another suspension of proceedings, the United States demanded proof that Plaintiff was authorized to represent HII, the named claimant, and to reinstate the appeals.  Id. ¶ 26 at 15.  Forced to present some proof of authorization from HII, Plaintiff finally communicated with HII in March 2002, sending Raymond Harbert – HII's President since July 1990 – a draft submission to the ASBCA purporting to represent that Plaintiff "had been acting as HII's attorneys" throughout the appeal.  Id. ¶ 26 at 15–16.  Raymond Harbert did not sign the draft submission and HII insisted that Plaintiff's future communications on the matter be made only through HII's attorneys.  See id.  Plaintiff alleges that "[f]rom that point [March 14, 2002], defendant, HII . . . contended that HII had no interest in the claims and appeals pending before the ASBCA and repeatedly hindered the efforts of plaintiff to successfully prosecute the

appeals." Id. Plaintiff claims that "[t]his hindrance and interference was manifested in many forms," such as attempts by HII to preclude Plaintiff from any further unauthorized contact with the ASBCA, in the name of or on behalf of HII, without prior written approval. Id.

The ASBCA eventually held an evidentiary hearing from November 18, 2002 through November 20, 2002, at which Raymond Harbert was called by the government to testify, *inter alia*, about the reinstatement of the appeals. Id. ¶ 32 at 17–18. Prior to the hearing, in a November 14, 2002 letter, HII's counsel informed Plaintiff that HII was willing to, and did, ratify the reinstatement unconditionally in order for BIE to be substituted for HII as the named appellant. Id. Alternatively, the letter set forth conditions under which HII would be willing to remain as the named appellant. Id. at 18. At the hearing, Raymond Harbert repeated this position, expressly referencing the November 14, 2002 letter. Id. at 17–18. Plaintiff has not alleged that the conditions set forth in the November 14, 2002 letter were unreasonable.

Following Mr. Harbert's testimony, the ASBCA issued an Order requiring HII to either unconditionally ratify the reinstatement or show cause as to why the appeal should not be dismissed. Id. at 18. Despite various communications with Plaintiff after the hearing, HII did not unconditionally ratify the reinstatement, except for the purposes stated in its November 14, 2002 letter and reiterated in Mr. Harbert's testimony, and the appeals were ultimately dismissed. Id.

According to Plaintiff:

At the time, defendants HII and/or Raymond Harbert, effectively decided to forfeit the Kwajalein claims, plaintiff's services were to be paid on the basis of an hourly fee of $150.00, plus a contingency or success fee of 20% of the first $2,000,000 recovered and 25% of all amounts recovered in excess of $2,000,000; with all amounts paid for services at the hourly rate to be deducted from any amount due on the contingency or success fee.

4

Id. ¶ 34 at 20.[2] Plaintiff claims the total value of the appeals was $20,116,762.56 at the time of forfeiture, and that Plaintiff is "entitled to payment under the contingency fee agreement on said sum in the amount of $4,779,830.20." Id. Plaintiff's claim reflects deductions for legal fees that it was paid during its work on the Kwajalein claims. Id. at 20–21.

Plaintiff asserts claims of (1) breach of contract against HII, Bill Harbert, BIE, and Bill Harbert International Construction, Inc.; (2) tortious interference with "Plaintiff's efforts to effectively pursue the Kwajalein claims" against Raymond Harbert and HII; and (3) unjust enrichment against Bill Harbert and BIE. Id. ¶ 38–42 at 21–22. In addition, Plaintiff claims that the corporate veil should be pierced, such that the individual Defendants are held liable for Plaintiff's claims against the corporate Defendants. Id. ¶ 43 at 22.

## ARGUMENT

### I. INTRODUCTION.

Plaintiff asserts a single cause of action against Raymond Harbert for tortious interference with contract and asserts two separate causes of action against HII for 1) breach of contract and 2) tortious interference with contract. Id. ¶¶ 38, 42 at 21, 22. These claims should be dismissed for three independent reasons. First, on the facts alleged, there was no breach of contract because the condition precedent of any obligation to pay a contingent fee to King & King was never satisfied, as no monetary recovery from Plaintiff's work on the Kwajalein contracts was ever made. Second, all of Plaintiff's claims are time barred because the suit was not filed within the applicable three year limitations period. Third, even if the contract claim

---

[2] Plaintiff alleges generally that a "fee agreement was signed by defendant, Bill Harbert, purportedly on behalf of defendants, HII and BHIC." Id. ¶ 34 at 21. Conspicuously absent from the Amended Complaint is any allegation identifying when the contingent fee agreement purporting to bind HII was executed by Bill Harbert.

was timely filed and adequately pled, Plaintiff's allegations are legally insufficient to establish a claim for tortious interference against HII or Raymond Harbert.

The standards by which this Court evaluates a motion to dismiss pursuant to Rule 12(b)(6) are well established. Cowin v. Bresler, 741 F.2d 410, 412 n.3 (D.C. Cir. 1984). Dismissal is appropriate if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1260 (D.C. Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). "To that end, the complaint is construed liberally in the plaintiffs' favor, and [the court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Williams 389 F.3d at 1257 (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997)). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In this diversity action, the court should apply District of Columbia law.

## II.    PLAINTIFF HAS NOT ADEQUATELY ALLEGED A BREACH OF THE FEE AGREEMENT.

### A.    Plaintiff has not alleged facts that support an obligation to pay the contingent fee.

Under District of Columbia law, "breach is an unjustified failure to perform all or any part of what is promised in a contract entitling the injured party to damages." Fowler v. A & A

Co., 262 A.2d 344, 347 (D.C. 1970) (internal citations omitted).  As alleged by Plaintiff, Defendant HII retained plaintiff under an hourly rate and a contingent fee agreement. First Amended Complaint ¶ 34 at 20.  Plaintiff acknowledges that it was paid for its work according to the hourly rate provision, id. at 20–21, and makes no allegation that there was any recovery whatsoever by HII or Raymond Harbert on the Kwajalein claims.

A contingent fee is "[a] fee charged for a lawyer's services *only if the lawsuit is successful* or is favorably settled out of court." Black's Law Dictionary (8th ed. 2004) (emphasis added).  Under District of Columbia law, an attorney retained under a contingency fee agreement may only recover a fee if the client recovers on its claim.  While it is true that a lawyer who is terminated before conclusion of the case may nonetheless receive a contingent fee payment, a precondition for that recovery is success on the claim by the former client.  See Green v. Louis Fireison & Assoc., 618 A.2d 185, 190 (D.C. 1992)("[If] a person who has retained a lawyer and agreed to pay a specified fee discharges him without cause, substantial performance by such lawyer entitles him to recover his agreed upon contingent fee even though the *final recovery is brought about* by successor counsel.")(emphasis added); Kaushiva v. Hutter, 454 A.2d 1373, 1375 (D.C. 1983) ("[W]here an attorney is discharged without cause *and the client subsequently recovers*, the attorney is entitled to the full amount of his fee.")(emphasis added); Greenberg v. Sher, 567 A.2d 882, 885–886 (D.C. 1989) (quoting In re Waller, 524 A.2d 748, 750 (D.C. 1987) ("[R]ecovery of the full contingency fee is most likely in cases in which the attorney has, before discharge, fully performed, substantially performed, or contributed substantially to *the results finally obtained by the client*.") (emphasis added)); Mackie v. Howland, 3 App. D.C. 461 (1894) (Attorneys entitled to contingent fee where shortly before recovery by client, client replaced attorneys and then completed transaction).

7

According to the First Amended Complaint, Plaintiff was entitled to a percentage of any recovery on the Kwajalein claims. First Amended Complaint ¶ 34 at 20. A recovery, via settlement or judgment, was therefore an express condition precedent to a payment of any contingent fees by HII to Plaintiff. Plaintiff does not (and indeed, cannot) allege that this condition precedent was met. Absent recovery by HII on the claims, Plaintiff had no right to payment. This is not a case of a client benefiting from the services of its attorney and seeking to exclude the attorney from its share of the client's recovery. Rather, according to the First Amended Complaint, HII's claim was dismissed; it recovered nothing, and is barred from ever recovering anything on the claim.

Plaintiff's claim that it "substantially performed its obligations and is entitled to payment in accordance with the fee agreement for its services," id., misses the point of the contingency. The precondition of a lawyer receiving a contingent fee is a recovery by the client through settlement or judgment, not simply that the lawyer did its job in representing the client. Similarly, Plaintiff's claim that "Plaintiff performed all that was required of it, or that reasonably could have been done to advance the Kwajalein claims to a successful resolution and favorable recovery on the amounts claimed," id. at 19, ignores the precondition of recovery by the client. Many lawyers operating under a contingent fee agreement have "performed all that was required" of them only to have their clients fail to recover for one reason or another. In such cases, no contingent fee is paid to the lawyer.

Plaintiff implies in the First Amended Complaint that this case is different from one that was simply lost on the merits, suggesting that HII had no right to decline to ratify the reinstatement of the claims unconditionally – and for all purposes – and in doing so breached the fee agreement. District of Columbia law is to the contrary. As legal counsel to HII, Plaintiff was

bound to abide by HII's decision regarding the objectives of representation.  See District of Columbia Rules of Prof'l Conduct R. 1.2(a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation.").    Contrary to Plaintiff's claims, the client's right to control the litigation is not subject to a subsequent claim by the lawyer for damages.  Were the law to the contrary, no contingent fee case could be settled unless the plaintiff's lawyer approved the amount of the settlement.

Indeed, Plaintiff itself recognized that it had no right to reinstate the appeals and pursue the claims in 2001 absent consent from its client.  That is why Plaintiff sought approval before filing the motion for reinstatement, although tellingly Plaintiff sought that approval from Bill Harbert and not from HII.  After obtaining the reinstatement of the appeals, albeit without authorization to do so, Plaintiff then pressed for HII to sign a statement that Plaintiff "had been acting as HII's attorneys" throughout the appeal.  Id. ¶ 26.  Plaintiff's desire to pursue the Kwajalein claims in the face of the contrary intentions of HII created a plain conflict of interest under applicable D.C. professional rules: "a lawyer shall not represent a client with respect to a matter if . . . [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by . . .  the lawyer's own financial, business, property, or personal interests."  District of Columbia Rules of Prof'l Conduct R. 1.7(b).  While an ultimate recovery by HII on the Kwajalein claims may have entitled Plaintiff to a contingent fee, pursuit of that fee was not permissible if it was contrary to the desires of the client.

In the end, Plaintiff's claim that it is entitled to a contingent fee payment even though the contingency went unmet turns the law on its head by subverting the client's interests to the interests of its lawyer.  There is no legal support for this radical position.  Plaintiff's claim for breach of contract is not actionable and should therefore be dismissed.

**B.    The ABSCA, not HII nor Raymond Harbert, is the legal cause of Plaintiff's alleged damages.**

Plaintiff claims damages based on the "defendant's failure to ratify the reinstatement of the appeals, and to permit plaintiff to prosecute the same to a conclusion before the ASBCA." First Amended Complaint ¶ 34 at 20.  However, according to the First Amended Complaint, HII and Mr. Harbert did not fail to ratify reinstatement of the appeals or prevent plaintiff from prosecuting the appeals.  In fact, in a letter dated November 14, 2002, HII stated "if it is necessary for HII to ratify the September 28, 2001 reinstatement of the appeals . . . *HII is willing to provide such a ratification and hereby does so*."  Id. ¶ 32 at 18.  HII also offered conditions under which it would be willing to remain as the named appellant.  Id.  This position was restated to the ABSCA by Raymond Harbert at the November hearing.

Without specifying its reasons, the ASBCA determined that the ratification of the appeals provided by HII and Raymond Harbert was not sufficient and chose to dismiss the appeal. Moreover, the ASBCA order did not articulate why the conditions offered by HII to remain as appellant in the ASBCA proceedings for all purposes was insufficient.  Indeed, Plaintiff itself makes no allegation that the conditions attached to HII's ratification were unreasonable.  The fact that the ABSCA found HII's statement insufficient to reinstate the appeal does not make the statements tortious or provide a basis for a breach of contract claim.  Instead, the dismissal of the appeals was the direct result of a decision by the ASBCA, not a result of any act or omission by HII or Raymond Harbert.

At bottom, Plaintiff essentially claims that it is entitled to damages because Raymond Harbert did not testify well enough to convince the ASBCA to sustain the claims.  There is no legal support for assessing liability in favor of a lawyer against its client in such circumstances.

### III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Under District of Columbia law, the period of limitations for actions in contract is three

years. 12 D.C. Code § 301(7); Plan Comm. v. PricewaterhouseCoopers, LLP, 2005 U.S. Dist.

LEXIS 18889, at *40–44 (D.D.C. 2005).    Similarly, "[t]he cause of action for tortious

interference with contract is subject to a three-year statute of limitations." Beard v. Edmondson

& Gallagher, 790 A.2d 541, 546 (D.C. 2002) (citing D.C. Code § 12-301 (8) (2001)).  Plaintiff's

suit was filed on January 20, 2006; consequently, to conform to the requirements of the statute of

limitations for both breach of contract and tortious interference, the causes of action must have

accrued no earlier than January 20, 2003.  See Thompson, Cobb, Bazilio & Assocs., P.C. v.

Grant Thornton LLP, 2002 U.S. Dist. LEXIS 4976, at *8 (D.D.C. 2002).  In this case, even

assuming, *arguendo*, that the allegations supported an actionable claim, any cause of action for

breach of contract or tortious interference accrued before 2003; accordingly, Plaintiff's claims

should be dismissed.

### A.    Any alleged breach of contract by HII occurred before 2003.

Under District of Columbia law, "[t]here is little doubt that hindrance or prevention of

performance is a breach of contract." Wash. Metro. Area Transit Auth. v. Quik Serve Foods,

Inc., 402 F. Supp. 2d 198, 202 (D.D.C. 2005) (citing Minmar Builders v. Beltway Excavators,

246 A.2d 784, 787 (D.C. 1968)).  Additionally, an action for breach of contract may accrue

where one party has repudiated the contract. "For a repudiation of a contract by one party to be

sufficient to give the other party the right to recover for breach, the repudiating party must have

communicated, by word or conduct, unequivocally and positively its intention not to perform."

Keefe Co. v. Americable Int'l, Inc., 755 A.2d 469, 475 (D.C. 2000) (quoting Order of AHEPA v.

Travel Consultants, Inc., 367 A.2d 119, 125 (D.C. 1976), cert. dismissed, 434 U.S. 802 (1977)).

"If a promisor so conducts himself as to make the substantial performance of his promise

impossible, this is a repudiation of his promise and has the same legal effect as would a repudiation in words." Arthur Linton Corbin, Corbin on Contracts, § 984 (Interim ed., Matthew Bender & Co. 2002)(1951).

"'Generally, accrual for contract cases occurs when the contract is first breached.'" Plan Comm., 2005 U.S. Dist. LEXIS 18889, at *40–44 (quoting Capitol Place I Assocs. L.P. v. George Hyman Constr. Co., 673 A.2d 194, 198 (D.C. 1996)). However, "[u]nder both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action." Cevenini v. Archbishop of Washington, 707 A.2d 768, 771 (D.C. 1998).

Plaintiff's breach of contract claim against HII is based on the theory that HII's and Raymond Harbert's decision not to ratify unconditionally – and for all purposes – the reinstatement of the appeal deprived Plaintiff of its opportunity to recover the contingent fee:

> "The total value of the Kwajalein claims/appeals, including interest thereon, which were forfeited *as a consequence of defendants' failure to ratify the reinstatement of the appeals*, and to permit plaintiff to prosecute the same to a conclusion before the ASBCA was $20,116,762.56, and plaintiff is entitled to payment under the contingency fee agreement on said sum in the amount of $4,779,83.20.

First Amended Complaint ¶ 34 at 20 (emphasis added). [3] If HII's failure to ratify can be considered a breach of contract, it was a repudiation that was made (and Plaintiff learned of it)

---

[3] Plaintiff's suggestion that the breach of contract occurred when the Defendants failed to pay Plaintiff upon demand years later is specious. By the terms of the alleged agreement, a contingent fee is only required to be paid on amounts "recovered" on the claim Id. ¶ 33 at 20. It is undisputed that no amounts were recovered, and thus the claim for breach is necessarily based on actions that allegedly prevented a recovery from being made, all of which occurred more than three years prior to filing of the lawsuit. Plaintiff's reference to payment demands made years after the fact is legally irrelevant to determining when the limitations period commenced.

by March 14, 2002 when Raymond Harbert and HII refused to "provide the Board with proof of plaintiff's authority to represent HII and specifically to have reinstated the appeals." Id. ¶ 26 at 15.

As alleged in the First Amended Complaint, Raymond Harbert first refused to ratify unconditionally the reinstatement of the appeals as requested by Plaintiff in March 2002. First Amended Complaint ¶ 26 at 15. As stated by Plaintiff:

> *From that point* [March 14, 2002], defendant, HII, and the Spriggs firm contended that HII had no interest in the claims and appeals pending before the ASBCA and repeatedly hindered efforts of plaintiff to successfully prosecute the appeals. This hindrance an interference was manifested in many forms . . . that if enforced would have made it a *practical impossibility* for plaintiff to have effectively represented HII before the Board.

First Amended Complaint ¶ 26 at 15–16 (emphasis added). During the summer of that year, Raymond Harbert refused to make himself available to Plaintiff for deposition preparation. Id. ¶ 28 at 16. In October 2002, Raymond Harbert and HII refused to respond to a letter from Plaintiff. Id. ¶ 31 at 17. HII even informed Plaintiff of its position regarding ratification in a November 14, 2002 letter from its counsel. Id. ¶ 32 at 18. Finally, at the November, 2002 hearing before the ASBCA, Raymond Harbert refused to ratify the reinstatement of the appeals except as stated in the November 14, 2002 letter. Id. ¶ 32 at 17–18.

The statute of limitations on Plaintiff's claim for breach of contract began to run between March and November 2002. As this case was not filed until January, 2006, the exact date in 2002 on which Plaintiff's cause of action accrued is irrelevant; based on Plaintiff's own assertions, no reasonable person could find that Plaintiff did not have actual knowledge of a cause of action in 2002.

Faced with the fact that all of the alleged actions by Raymond Harbert and HII occurred more than three years before the Complaint was filed (and mindful of the statute of limitations

argument in defendant's initial motion to dismiss), Plaintiff amended its Complaint in an attempt to muddy the waters regarding communications that occurred after the November hearing. The Amended Complaint contains a fresh allegation that HII did continue to indicate via letters, facsimile messages and email of its various representatives, prepared subsequent to the conclusion of the November 2002 hearing, "that it might ratify the reinstatement of the appeals." Id. ¶ 32 at 18. However, it is significant that there is no allegation that any of these communications occurred after January 20, 2003, the operative limitations date, and thus they are insufficient to save Plaintiff's claims.[4]

Finally, there is no legal support for any claim that HII's refusal to ratify the reinstatement of the appeals unconditionally and for all purposes was ineffective and meaningless until January 2003 when the ABSCA placed it imprimatur on the finality of HII's decision. An action for breach of contract accrues when the breach occurs, not when some third party acts on it. See Plan Comm. v. PricewaterhouseCoopers, LLP, 2005 U.S. Dist. LEXIS 18889, at *40–44 (D.D.C. 2005).

**B.    Any tortious interference by HII or Raymond Harbert occurred before 2003.**

"Ordinarily, a plaintiff's cause of action accrues at the time he suffers the injury alleged." Nelson v. American Nat'l Red Cross, 26 F.3d 193, 196 (D.C. Cir. 1994) (quoting Burns v. Bell, 409 A.2d 614, 615 (D.C. 1979)). "'Where the fact of an injury can be readily determined, a claim accrues at the time that the plaintiff suffers an alleged injury.'" Plan Comm., 2005 U.S. Dist. LEXIS 18889, at *41 (quoting Hendel v. World Plan Exec. Council, 705 A.2d 656, 660

---

[4] To the extent the Court believes that the reference to communications that postdate the November 2002 hearing are relevant for statue of limitations purposes, Plaintiffs should at least be required to make a more definite statement regarding the dates, contents, and sources of these communications.

(D.C. 1997)). "Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action." Cevenini v. Archbishop of Washington, 707 A.2d 768, 771 (D.C. 1998).

According to the First Amended Complaint, Plaintiff first became aware that HII had assigned the Kwajalein contracts to HIE following a "demand by counsel for the Government in Honolulu in February 1997 for the production of any such assignment documents." First Amended Complaint ¶ 20 at 11. In August and September 2001, Plaintiff received no response from Bill Harbert to its request for authorization to proceed with the appeals. Id. ¶ 25 at 14–15. In March 2002, Plaintiff was informed by HII that all future communication with Raymond Harbert must be made through counsel. Id. ¶ 26 at 15. According to Plaintiff, "from that point, defendant, HII . . . repeatedly hindered the efforts of plaintiff to successfully prosecute the appeals." Id. at 15–16. According to the First Amended Complaint, HII's and Raymond Harbert's "hindrance and interference was manifested in many forms." Id. Finally, at the hearing in late November 2002 regarding the Kwajalein contracts, Defendant Raymond Harbert "refus[ed] to unconditionally ratify the reinstatement of the Kwajalein appeals." Id. ¶ 32 at 18.

Under District of Columbia law, "a plaintiff cannot wait until he has every fact but must sue when he has sufficient information establishing a legal wrong." Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP, 2002 U.S. Dist. LEXIS 4976, at *8 (D.D.C. 2002) (citing Cevenini, 707 A.2d at 771 (plaintiff must sue when she has (1) knowledge of an injury, (2) its cause, and (3) some evidence of wrongdoing)). In this case, Plaintiff had sufficient information to pursue its claim for the alleged legal wrong throughout 2002. Indeed, Plaintiff could not possibly have been unaware of the accrual of a cause of action, as indicated by the detail with

which Plaintiff characterizes the persistent nature of the alleged "interference" by HII and Raymond Harbert. See First Amended Complaint ¶¶ 26–28 & 31–32 at 15–18. Plaintiff most certainly had sufficient information at the time of Raymond Harbert's statements before the ASBCA in late November 2002, after which the ASBCA terminated the appeal. None of the allegedly tortious actions by HII or Raymond Harbert took place after November 2002. Accordingly, Plaintiff's claims for tortious interference are time barred and must be dismissed.

IV.    **THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT DO NOT SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE BY HII OR RAYMOND HARBERT.**

Plaintiff alleges HII and Raymond Harbert tortiously interfered "with Plaintiff's efforts to effectively pursue the Kwajalein claims." First Amended Complaint ¶ 42 at 22. Under District of Columbia law, the elements of tortious interference with contract are 1) existence of a contract, 2) knowledge of the contract, 3) intentional procurement of its breach or termination by the defendant, and 4) damages resulting there from. See Sturdza v. United Arab Emirates, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (quoting Sorrells v. Garfinkel's, Brooks Bros., Miller & Rhoads, Inc., 565 A.2d 285, 289 (D.C. 1989)).[5] Plaintiff has not alleged facts supporting the elements of a prima facie case of tortious interference against either HII or Raymond Harbert. Plaintiff's claims for tortious interference should therefore be dismissed.

---

[5] The District of Columbia also recognizes an action for tortious interference with prospective advantage or business expectancy. See Riggs v. Home Builders Inst., 203 F. Supp. 2d 1, 24 (D.D.C. 2002). The language of the First Amended Complaint is unclear as to which tort is being alleged. However, as Plaintiff's efforts to pursue the appeals arose out of its alleged fee agreement with defendants HII and Bill Harbert International Construction, Inc., it would appear that such claim is properly construed as tortious interference with contract.

A.    **There was no breach of contract.**

One necessary element of a tortious interference claim is the intentional procurement of breach of contract. See Sturdza 281 F.3d at 1305. In this case, however, defendants never breached the fee agreement. As noted in Part II, *supra*, a successful lawsuit and recovery on the Kwajalein claims was an express condition precedent to a payment of any contingent fees by HII to Plaintiff. Plaintiff has no right to payment because, as alleged in the First Amended Complaint, the condition precedent to Plaintiff's right to payment was never satisfied. Defendant HII consequently has no duty to pay Plaintiff.

Moreover, Plaintiff's own allegations recognize that HII had an absolute right not to reinstate the appeals. Were it otherwise, Plaintiff would not have first sent a letter requesting authorization to reinstate the appeal and later indicated that it would move to reinstate the appeal without authorization, unless it "received written instructions to the contrary." Id. ¶ 25 at 14. Plainly, had such written instructions been received, the appeal would have remained dismissed and no issue regarding ratification would have ever arisen. Plaintiff's unilateral decision to reinstate the appeals cannot be used to place Raymond Harbert or HII in a position whereby their decision to exercise a right to abandon the claims exposes Mr. Harbert or HII to tort liability.

B.    **There are no allegations that Raymond Harbert intentionally procured a breach of the fee agreement.**

A necessary element of a tortious interference claim is intentional procurement of a breach. See Sturdza 281 F.3d at 1305. Plaintiff claims damages based on the "defendant's failure to ratify the reinstatement of the appeals." First Amended Complaint ¶ 34 at 20. However, HII and Mr. Harbert, did ratify the reinstatement of the appeals. At the ASBCA hearing, Raymond Harbert cited the November 14, 2002 letter agreeing to ratify the reinstatement and testified that HII's position was set forth in the letter. Id. ¶ 32 at 17–18. There

17

is absolutely no allegation that Raymond Harbert testified with the intent that the claims would be dismissed and Plaintiff's contract be thwarted. In fact, the only inference from the allegations is to the contrary. As alleged, Mr. Harbert's intent was to permit Plaintiff to proceed with the appeal on behalf of Bill Harbert and BIE, not to interfere with Plaintiff's fee agreement.

Moreover, Mr. Harbert cannot be found tortiously liable for the ASBCA's legal decision not to accept a conditional ratification. It was that decision, and not any action by Mr. Harbert or HII, that resulted in the dismissal of the claims

### C. As parties to the alleged contract, HII and Raymond Harbert cannot tortiously interfere with their own contract.

A fundamental requirement of any claim for tortious interference is that the accused party must be a stranger to the contract:

> One who intentionally and improperly interferes with the performance of a contract . . . *between another and a third person* by inducing or otherwise causing *the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of *the third person* to perform the contract.

Curaflex Health Servs. v. Larry M. Bruni, M.D., P.C., 899 F. Supp. 689, 694 (D.D.C. 1995) (quoting Sorrells v. Garfinkel's, Brooks Bros., Miller & Rhoads, Inc., 565 A.2d 285, 290 (D.C. 1989) (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 766 (1979))). Plaintiff alleges in the First Amended Complaint that it was retained by HII, and that HII was party to a fee agreement with Plaintiff. See First Amended Complaint ¶¶ 13, 37 at 6, 21. Accepting for the purposes of this motion that an agreement did exist between HII and Plaintiff, as a matter of law, HII cannot tortiously interfere with that agreement. Plaintiff's claim against HII for tortious interference should therefore be dismissed.

Similarly, acting in his capacity as an officer of HII, Raymond Harbert was an implied party to the contract. "Because a corporation cannot act other than through its officers and

agents, a corporate officer is an implied party to the contract and, therefore, does not have the third-party status necessary to be liable for tortious interference with contract." Weaver v. Gross, 605 F. Supp. 210, 216 (D.D.C. 1985) (citing Donohoe v. Watt, 546 F. Supp. 753, 757 (D.D.C. 1982), aff'd, 230 U.S. App. D.C. 70, 713 F.2d 864 (D.C. Cir. 1983)). Plaintiff cannot end run the requirement that one who tortiously interferes with a contract must be a third party by claiming that Mr. Harbert, HII's President, tortiously interfered with HII's contract.

> **D.    As the President of HII, Raymond Harbert was privileged to induce HII to breach its alleged contract with Plaintiff.**

In the District of Columbia, "[a]s a matter of law, 'a[] [corporate] officer is privileged to induce the corporation to violate a contractual relation . . . provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interest of the corporation.'" Curaflex Health Servs. 899 F. Supp. at 695 (quoting 9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228, 231 (La. 1989)). Moreover, "[s]o long as a corporate officer is acting in the corporation's interests, and is acting within the scope of his authority, his personal motivation is irrelevant, even if his actions happen to benefit himself or if he acts with ill will towards another." Curaflex Health Servs., 899 F. Supp. at 696. "The public policy behind this approach is sound. So long as corporate officers act in pursuit of what they faithfully believe to be their corporation's best interests, they should not be deterred by the threat of personal liability." Id. (internal citations omitted).

> **1.    There is no allegation in the First Amended Complaint that Raymond Harbert exceeded the scope of his authority.**

Raymond Harbert is the President of HII. First Amended Complaint ¶ 16 at 9. There is no allegation in the First Amended Complaint that Mr. Harbert, as President of HII, exceeded his authority by refusing to ratify the reinstatement of the appeals before the ASBCA. Indeed, Plaintiff's cause of action for breach of contract against HII is predicated entirely on Mr. Harbert

19

acting pursuant to his authority to bind HII by refusing to ratify the reinstatement of the appeals brought in HII's name.

### 2. There is no allegation that Raymond Harbert knowingly committed acts adverse to the interest of HII.

There is no allegation in the First Amended Complaint that Raymond Harbert committed acts adverse to the interests of HII by refusing to ratify the reinstatement of the appeals before the ASBCA. Rather, Plaintiff's First Amended Complaint is premised on the fact that Mr. Harbert's actions were ultimately adverse to the interests of Plaintiff. Indeed, as HII had assigned any interest in the underlying contracts or proceeds from the appeals to BIE, no result in the appeal would have been materially adverse to HII.

## V. THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT DO NOT SUPPORT A CLAIM FOR PIERCING THE CORPORATE VEIL.

Confronted with a showing that its initial Complaint could not support any claim of personal liability against Raymond Harbert, Plaintiff amended its Complaint to allege that corporate veils should be pierced and the individual Defendants held personally liable because the "individual defendants frequently disregarded the formalities associated with conducting business in a corporate format." First Amended Complaint ¶ 43 at 22. Plaintiff provides absolutely no factual basis for this conclusion of law; the allegation should therefore be discarded. Indeed, the Amended Complaint does not even identify which individuals and which corporations are involved. It is well established that "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Accordingly, Plaintiff's veil piercing claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants HII and Raymond Harbert respectfully request that Plaintiff's claims against them be dismissed pursuant to Rule 12(b)(6).

## REQUEST FOR ORAL HEARING

Pursuant to Local Civil Rules 47(f) and 78.1, Defendant HII and Defendant Raymond Harbert hereby respectfully request this Court to schedule an oral hearing on this motion.

Respectfully Submitted

HARBERT INTERNATIONAL, INC.
RAYMOND J. HARBERT

By:_____/s/_____
    Michael J. McManus    (#263832)
    Jeffrey J. Lopez        (#453052)
    DRINKER BIDDLE & REATH LLP
    1500 K Street, N.W.
    Suite 1100
    Washington, D.C. 20005
    Telephone: (202) 842-8800
    Facsimile: (202) 842-8465

*Attorneys for Harbert International, Inc. and Raymond J. Harbert*

March 27, 2006