**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KING & KING, CHARTERED,** )<br>)<br>Plaintiff, )<br>v. )<br>)<br>**HARBERT INTERNATIONAL, INC.,** )<br>*et al.*, )<br>)<br>Defendants. ) | Civil Action No. 1:06-cv-00324 (JDB) |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF
LAW OF DEFENDANTS BILHAR INTERNATIONAL ESTABLISHMENT, BILL
HARBERT INTERNATIONAL CONSTRUCTION, INC., AND BILL L. HARBERT**

Defendants Bilhar International Establishment ("BIE"), Bill Harbert International Construction, Inc. ("BHIC") and Bill L. Harbert ("Bill Harbert"), by and through counsel, hereby respectfully move this Court to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), the First Amended Complaint ("Amended Complaint") of Plaintiff King & King, Chartered ("King & King") against them in the above captioned action for failure to state a claim upon which relief can be granted.

**STATEMENT OF FACTS**

Defendants BIE, BHIC and Bill Harbert incorporate herein the Statement of Facts in Defendants Harbert International, Inc. ("HII") and Raymond J. Harbert's Motion to Dismiss First Amended Complaint and Memorandum of Law (hereafter, "HII Motion to Dismiss"). *See* HII Motion to Dismiss at pp. 2-5.

Plaintiff's original complaint, removed to this Court on February 23, 2006, asserted that Bill Harbert and BHIC breached the fee agreement with Plaintiff by failing to pay Plaintiff in

accordance with an alleged fee agreement that Plaintiff has failed to provide to Defendants or the Court.[1]  On March 12, 2006, Plaintiff filed its Amended Complaint[2] containing the same claim and, again, failing to provide the fee agreement (if any exists).  Also, like the original complaint, the Amended Complaint asserts tortious interference on the part of Raymond Harbert and HII and that, if Bill Harbert lacked authority to enter into the fee agreement on behalf of HII, then Bill Harbert and BIE are liable under the theory of unjust enrichment.  The Amended Complaint adds two new claims that BIE and Bill Harbert have breached an implied-in-fact contract with Plaintiff, and that the corporate veil should be pierced such that the individual defendants are found personally liable.

As Plaintiff has failed to state a cause of action against any corporate Defendant, and to allege even one instance of a corporate Defendant disregarding the formalities associated with conducting business in a corporate form which would support piercing the corporate veil, there is no basis whatsoever for holding any corporate or individual Defendant liable.

## ARGUMENT

### I.   INTRODUCTION AND LEGAL STANDARD

With regard to Defendants BIE, BHIC and Bill Harbert, Plaintiff asserts that:

(i)   Bill Harbert and BHIC breached the fee agreement with Plaintiff;

(ii)  if Bill Harbert lacked the authority to enter into the agreement with Plaintiff on behalf of HII, BIE and/or Bill Harbert were unjustly enriched; and

---

[1] Plaintiff fails to allege even the date of the purported fee agreement.

[2] The Amended Complaint superseded Plaintiff's original complaint and rendered BIE, BHIC and Bill Harbert's first motion to dismiss, and Plaintiff's Response thereto, moot.  *See* footnote 1 to Defendant HII's Motion to Dismiss at 1, incorporated herein.

> (iii)   that BIE and Bill Harbert have breached an implied-in-fact contract with Plaintiff and should be required to compensate Plaintiff pursuant to the alleged fee agreement; and
>
> (iv)   that the corporate veil should be pierced such that Bill Harbert is held personally liable for Plaintiff's claims against the corporate Defendants.

*Id.,* at ¶¶ 38 – 43, pp. 21-22

All of Plaintiff's claims against BIE, BHIC and/or Bill Harbert should be dismissed because (i) the claims are barred because Plaintiff's action was not filed within the applicable three year limitations period, (ii) even if not time barred, by Plaintiff's own admission the condition precedent to its right to payment, *i.e.,* monetary recovery on the Kwajalein contracts claims, never occurred, and (iii) even if Plaintiff filed within the time required by the applicable statute of limitations and its claims were sufficiently pled, Plaintiff's allegations are legally insufficient to establish claims against BIE, BHIC or Bill Harbert.

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 472 (D.C.Cir. 1991). As the court stated in *BDC Capital Properties, L.L.C. v. Trinh,* 307 F.Supp.2d 12, 13 (D.D.C. 1994):

> Under 12(b)(6), a court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar Secs. Corp.,* 44 F.Supp.2d 351, 353 (D.D.C. 1999). In reviewing such a motion, the court accepts the allegations in the non-movant's pleading as true and draws all reasonable inferences in the non-movant's favor. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir. 1983). However, the court need not accept as true plaintiff's legal conclusions. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed2d 209 (1986). A complaint may not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46, 78 S.Ct. 99.

"In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *United States ex rel. Williams v. Martin-Baker*

*Aircraft Co.*, 389 F.3d 1251, 1257.  Substantive issues of law are evaluated according to the law of the District of Columbia.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

District of Columbia law imposes a three (3) year limitation on actions based on contract (D.C. Code 1981 § 301(7)) and unjust enrichment (D.C. Code 1981 § 12-301; *see also Construction* Interior *Systems, Inc. v. Donohoe Companies, Inc.,* 813 F.Supp. 29 (D.D.C. 1992)). As Plaintiff's original complaint was filed on January 20, 2006, any alleged injury based on breach of contract, breach of an implied-in-fact contract or unjust enrichment must have occurred on or after January 20, 2003 to avoid the bar of the statute of limitations.

Because the bases for Plaintiff's breach of contract, breach of implied-in-fact contract and/or unjust enrichment claims against Defendants BIE, BHIC and Bill Harbert are the same as its breach of contract action against Defendant HII, BIE, BHIC and Bill Harbert incorporate by reference Section III.A of HII's legal argument entitled "**Any alleged breach of contract by HII occurred before 2003**." *See* HII Motion to Dismiss at 11-14.

Defendants BIE, BHIC and Bill Harbert note that Plaintiff's original complaint was fatally flawed, as the complaint showed on its face that Plaintiff's action was time barred. Plaintiff's desperate attempts, in its Amended Complaint, to correct this patent defect and stretch the date on which it knew or should have known that (i) HII did not want to and/or would not reinstate its appeal with the Armed Services Board of Contract Appeals ("ASBCA") or (ii) alternatively, that Plaintiff's unauthorized reinstatement of the appeal would not be ratified (*i.e.*, the date of its injury) to just past January 20, 2003 is transparent, disingenuous and, ultimately, insufficient.  Plaintiff is trying to plead out from under the statute of limitations but cannot, as its own statement of facts shows that Plaintiff knew or should have known of its alleged injury long before January 20, 2003.

Plaintiff's attempts to stretch the date it knew or should have known of its injury are in response to an argument in HII's first motion to dismiss (*see* Section II.A., pp. 6-7 of that motion) and adopted by Defendants BIE, BHIC and Bill Harbert in their first motion to dismiss (*see* Section II, p. 3), that any alleged breach occurred, and any cause of action accrued, "*no later than* November 2002, *well before* January 20, 2003," the cut off date under the applicable statutes of limitations.  Scrambling, Plaintiff drafted its Amended Complaint so as to assume that Plaintiff's cause of action was alive on November 20, 2002 and then attempts to "bridge the gap" between November 20, 2002 and January 26, 2003.  Amended Complaint, ¶32 at 17-18.  To do this, Plaintiff now claims that Raymond Harbert's refusal to ratify the reinstatement during the November 2002, ASBCA hearing was equivocal, presumably leading Plaintiff to believe until the date to respond to the show cause order expired (conveniently, January 26, 2003) that HII might ratify Plaintiff's actions.

Plaintiff's latest claims are insufficient to overcome dismissal.  First, HII's and/or Raymond Harbert's decision not to ratify the appeals was not a breach.  *See* HII Motion to Dismiss at Section IV.A at 16-17, incorporated herein.  Second, even if it was, Plaintiff's cause of action accrued long before November 2002.  Defendants did not argue in their original motions to dismiss that any alleged breach occurred during the November 2002 ASBCA hearing. Defendants, instead, showed that any breach occurred "*no later than* November 2002 . . . ."  *See* HII Motion to Dismiss, Section II.A at 6-7.

Defendants HII and Raymond Harbert argue in the HII Motion to Dismiss that the Plaintiff knew or should have known of its injury in March 2002.  *See* Section III.A at 13. Defendants BIE, BHIC and Bill Harbert add that the Court could and should find that Plaintiff knew or should have known long before that – specifically, in September 2001.

Plaintiff admits it had no authority to reinstate the appeals. This is evidenced by the fact that Plaintiff knew it had to write its client for permission to reinstate the appeal, and did so. *See* Amended Complaint, ¶ 25 at 14-15. Plaintiff also knew or should have known on September 29, 2001 that HII did not want to pursue the appeals after failing to receive the requested authorization to reinstate the appeal on or prior to the September 28, 2001 ASBCA deadline. *Id*. Having sent notice of the approaching deadline and specifically requesting authorization to reinstate the appeal, having failed to receive authorization, and the deadline having passed (which operated to forever bar HII's or any other Defendant's recovery on the Kwajalein appeal), Plaintiff's cause of action accrued on September 29, 2001. The fact that Plaintiff, on its own and without authority, attempted to reinstate the appeals is of no consequence, as Defendants HII and Raymond Harbert never ratified the reinstatement. *See*, *e.g*., *Id*., ¶ 32 at 16-17; ¶ 42 at 22 (stating HII and Raymond Harbert failed to ratify the reinstatement). Thus, the "reinstatement" was a nullity, and Plaintiff cannot rely on its misconduct to postpone the date of accrual into late November 2002 or early 2003.

Furthermore, Plaintiff admits that it sent the August 20, 2001 and September 26, 2001 letters to Defendant Bill Harbert, an individual Plaintiff knew at the time not to be affiliated with Defendant HII. In fact, Plaintiff admits that it knew that Bill Harbert was not affiliated with HII since 1992, approximately 9 years earlier. Amended Complaint, ¶6 at 3; *see also Id*., ¶ 37 at 21 ("after the separation of [HII's and Bill Harbert's] respective interests in 1991 . . . ."). Therefore, at the time Plaintiff sent these letters, it knew or should have known that it was sending them to someone no longer affiliated with HII and who no longer had authority to authorize

reinstatement.[3]  Not surprisingly, Plaintiff did not receive authorization to reinstate the appeals.  Nevertheless, Plaintiff notified the ASBCA that HII was reinstating the appeal (which HII was not because it never received Plaintiff's letters addressed to HII's *former* director) and now attempts to extend the date of accrual based on the fact that it did not receive HII's written instructions *not* to reinstate by September 28, 2001.  *Id*., ¶ 25, at 14-15.

Even if Plaintiff somehow did not know or have reason to know on September 29, 2001 that its client did not wish to and would not reinstate the appeal, Plaintiff certainly knew or should have known shortly after March 13, 2002 when it sent Defendant Raymond Harbert its draft response to the Government's specific request for proof of authority to reinstate the appeals.  Plaintiff admits that the draft letter included language that, if accepted and signed by Raymond Harbert on behalf of HII, would unequivocally state that Plaintiff was HII's attorney with respect to the appeals.  Plaintiff admits that Raymond Harbert refused to sign the letter, a refusal that put Plaintiff on notice that HII would not reinstate the appeal.

If HII's refusal to sign the letter were not enough, Plaintiff also admits that (1) Raymond Harbert had his attorney(s) at the Spriggs firm send a letter advising Plaintiff that Mr. Joel Piassick now represented Raymond Harbert and was in control of all communications between Plaintiff and Mr. Harbert, and (2) that "[f]rom that point, defendant, HII, and the Spriggs firm contended that HII *had no interest in the claims and appeals* pending before the ASBCA and *repeatedly hindered the efforts of plaintiff* to successfully prosecute the appeals."  Amended Complaint, ¶ 26 at 15 (emphasis added).  If these two statements did not amount to an unequivocal removal of any remaining authority from, or firing of, Plaintiff, they most certainly

---

[3] As Plaintiff has admitted that it knew that Bill Harbert was no longer working for or affiliated with HII, there is no issue of apparent authority (assuming, *arguendo*, that would be sufficient).

served as an unequivocal refusal to ratify Plaintiff's unauthorized reinstatement of the appeal and triggered the statute of limitations.

Moreover, Plaintiff's Amended Complaint goes on to plead that, from March 14, 2002, Defendants engaged in "*hindrance and interference* . . . manifested in many forms,*"* including (1) demands that HIE and Defendant Bill Harbert enter into "onerous agreements," and (2) attempts to *preclude Plaintiff from any contact with the ASBCA* without Mr. Piassick's written approval and other conditions that made it "*practically impossi[ble]*" for Plaintiff to pursue the appeals. *Id.*, ¶ 26 at 16. And, yet, Plaintiff claims that it did not have knowledge that its client had refused to ratify Plaintiff's self-serving reinstatement of the appeal until January 26, 2003. *Id.*, ¶32 at 18. Plaintiff's "practical impossibility" of pursuing the appeal, under the circumstances, was a real impossibility and, naturally, means that any recovery on the appeal (and contingency fee) was also impossible. BIE, BHIC and Bill Harbert submit that the Court must find that Plaintiff knew or should have known of its injury at the time Plaintiff realized the impossibility of pursuing the appeals – that is, on or about March 14, 2002 (and Defendants BIE, BHIC and Bill Harbert submit it was much earlier than that).

Assuming, *arguendo*, that the above facts pled in the Amended Complaint did not put Plaintiff on notice, the following facts certainly did:

- (1) Raymond Harbert's refusal to meet with Plaintiff to prepare for the deposition on the issue of assignment (*Id.*, ¶ 28 at 16);

- (2) HII's refusal to respond to Plaintiff's October 11, 2002 letter and refusal to perform an audit which allegedly was a condition to allowing Plaintiff to proceed with the appeals (*Id.*, ¶ 31 at 17);

- (3) Raymond Harbert's refusal, during the November 18-20, 2002 hearing, to ratify the reinstatement, while under oath and under repeated questioning by the ASBCA Administrative Judge, as well as after a warning that ratification was a condition precedent to continued prosecution of the appeals (*Id.*, ¶ 32, at 17-18); and

> (4) The ASBCA's issuance of a show cause order on December 27, 2002, an act which by itself, and certainly under the above-described circumstances, would have led any reasonable person to know that Defendants HII and Raymond Harbert had no intention ratify Plaintiff's reinstatement of the appeals (*Id.*, ¶ 32 at 18).

Defendants BIE, BHIC and Bill Harbert note that none of the events that allegedly occurred from September 28, 2001 on would have occurred but for Plaintiff acting on its own and without its client's authority. Plaintiff cannot be allowed to improperly reinstate the appeal, an act that resulted in a series of events that would not otherwise have occurred, and then benefit by claiming that the same postponed the accrual of its causes of action. Clearly, Plaintiff's own allegations show that it knew or should have known that HII did not wish to reinstate the appeal and/or would not ratify Plaintiff's unauthorized and self-serving reinstatement of the appeal *long before* January 26, 2003, and Plaintiff has not shown and cannot show any set of facts that would bring its suit within the statute of limitations. The fact that the ASBCA dismissed the appeal in January 26, 2003 is irrelevant and of no consequence.[4]

### III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BILL HARBERT, PERSONALLY, OR BHIC FOR BREACH OF CONTRACT

#### A. Plaintiff Has Not Adequately Alleged That the Contingency Fee Agreement Has Been Breached

Defendants BIE, BHIC and Bill Harbert incorporate herein, as if fully set forth, Defendants HII's arguments (at Sections II and IV.A. of the HII Motion to Dismiss) that Plaintiff was not entitled to payment under the contingency fee agreement and has failed to establish that the fee agreement was breached by HII (or any other Defendant).

---

[4] Plaintiffs BIE, BHIC and Bill Harbert specifically incorporate the argument on this point in Section II.A. (p. 14) of the HII Motion to Dismiss. Plaintiffs BIE, BHIC and Bill Harbert submit that any claim by Plaintiff that the ASBCA's actions establish the date of accrual of Plaintiff's causes of action is a red herring and should be disregarded.

Conspicuously absent from the Amended Complaint is the written fee agreement which is required by District of Columbia Rules of Professional Conduct ("RPC") 1.5(b) and (c) ("A contingent fee agreement *shall* be [sic] writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer *in the event* of settlement, trial or appeal . . . ." (emphasis added)).

More importantly, Plaintiff fails to allege that it was not compensated for its services (assuming, *arguendo*, they were authorized). To the contrary, Plaintiff's own factual statements show that it was fully compensated pursuant to the alleged fee agreement. First, Plaintiff fails to allege that it was not paid for its services on an hourly basis and admits it received payment of all the "reduced hourly rate" hours billed. *See* Amended Complaint, ¶ 34 ("plaintiff is entitled to payment under the contingency fee agreement on said sum in the amount of $4,779,830.20, which amount *includes deductions for amounts previously paid by defendants to plaintiff for the reduced hourly rates plaintiff billed previously* under the contingent fee agreement" (emphasis added)).

Second, Plaintiff admits it was entitled to an additional "contingency or success fee" only if a recovery was achieved, a condition precedent that did not occur. *See Id*, ¶ 34 ("plaintiff's services were to be paid on the basis of a reduced hourly fee of $150.00, plus a *contingency or success fee* of 20% of the first $2,000,000 recovered and 25% of all amounts *recovered* in excess of $2,000,000, with all amounts paid for services at the hourly rate to be deducted from *any amount due on the contingency or success fee*. . . .") (emphasis added). Plaintiff does not allege any recovery on the Kwajalein claims or any other facts supporting an obligation on the part of any Defendant to pay the contingency fee.

Additionally, Plaintiff admits that "[t]he forfeiture of the claims effectively acted to discharge plaintiff from its agreement to provide legal services in connection with the prosecution of the appeals," *id*., ¶ 34 at 20, an act which would have discharged Defendants' duty to further compensate Plaintiff. Plaintiff does not allege wrongful discharge and would have no factual or legal basis to do so. *See* RPC Rule 1.2 (a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation, . . . and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.") Defendants had every right not to pursue their ASBCA appeal.

On its face, Plaintiff's Amended Complaint shows that Plaintiff was fully compensated by HII for its work on an hourly basis and was, thereafter, (i) discharged from the agreement (which act discharged HII's duty to further compensate Plaintiff) or, (ii) alternatively, not discharged but is not entitled to additional compensation because no recovery was received. Unwilling to accept its client's decision, and placing its own financial interests above those of its client, King & King acted on its own authority to "reinstate" the appeal and continued to press the appeal in the face of clear indications from HII that it did not wish to pursue the appeal. Therefore, the Amended Complaint must be dismissed.

Alternatively, or in addition, Plaintiff's Amended Complaint must be dismissed as Plaintiff's alleged damages, which damages are a prerequisite to recovery, are completely speculative. Plaintiff has failed to allege facts in support of the claimed $20,116,762.56 amount of the Kwajalein appeal, or from which the Court could find that HII would have recovered the entire amount claimed had the ASBCA litigation continued. No reasonable person could determine the amount, if any, that HII would have recovered if the ASBCA appeal had run its

course (which amount is required to determine the amount by which Plaintiff was allegedly injured).

    **B.**    <u>**Plaintiff Has Admitted that Bill Harbert Was Acting on Behalf of HII**</u>

"It is a general principle of corporation law that the officers and employees of a corporate entity are its agents. . . .Under the law of the District of Columbia, an agent is not personally liable on a contract it executes on behalf of a principal so long as it identifies the principal and discloses the agency relationship. . . . The requirement of disclosure is satisfied if, at the time of the transaction, the other party had notice that the agent is acting for a principal and of the principal's identity." *Ridgewell's Caterer, Inc. v. Nelson,* 688 F.Supp. 760, 762 (D.D.C. 1988) (citations omitted).

Here, Plaintiff admitted that Bill Harbert was acting on behalf of HII. *See, e.g.,* Amended Complaint at ¶ 9 ("At all times subsequent to the creation of HII in 1981, plaintiff reasonably believed that it had been engaged by and was providing legal services to *defendant, HII,* in respect to each of these international construction projects"); ¶ 13 ("In July, [sic] 1990, defendant, Bill Harbert, *then president of HII* authorized the engagement of plaintiff to provide legal advice with respect to the Kwajalein contracts, and more particularly *to help HII* . . . . With its engagement by defendant, *HII*, in July 1990, plaintiff was actually involved, [sic] on, [sic] essentially a continuous basis, in providing legal advice and assistance *to HII* . . . ."); ¶ 37 ("At all times, from the beginning of plaintiff's retention by defendant, Bill Harbert, in 1990 through early 2002, defendant Bill Harbert had authority, either actual or apparent to act on behalf of defendant, *HII*. . . .");¶ 38 ("By failing to make payment to plaintiff, defendant, *HII*, has breached the fee agreement with plaintiff entered into by defendant, Bill Harbert, *on its behalf*") (all emphasis added).

As pointed out in Defendants' BIE, BHIC and Bill Harbert's original motion to dismiss, Plaintiff provided no basis in its complaint for imposing liability on Bill Harbert for HII's alleged breach of the putative fee agreement. Thus, its claim against Bill Harbert should be dismissed.

In its Amended Complaint, Plaintiff attempts to cure this defect by adding an allegation that, after Defendant Bill Harbert and HII severed their ties in 1991, Bill Harbert acted on his own behalf. *Id*., ¶ 37 at 21. However, Plaintiff fails to allege a single fact in support of this newfound allegation, particularly since the appellant in the ASBCA appeal was HII. Plaintiff also alleges that Bill Harbert promised to pay Plaintiff the fees owed by HII. *Id*., ¶ 34 at 21. However, as shown in Section III.A, *supra*, Plaintiff has admitted it was paid all fees earned and billed; therefore, even if Plaintiff's allegation is true, its Amended Complaint shows that the promise[5] was satisfied. Plaintiff also fails to allege that Bill Harbert personally benefited by any work performed by Plaintiff. Additionally, Plaintiff's bare allegation that "the individual defendants frequently disregarded the formalities associated with conducting business in a corporate format when it benefited their interests or otherwise suited them, inducing others, including plaintiff to perform or act in reliance thereon to their detriment" cannot help Plaintiff avoid dismissal, as he has failed to allege a single instance in which the individual Defendants failed to follow corporate formalities or any other factual allegation supporting this claim. *Id*., ¶ 43 at 22.

**C. The Complaint Fails to Contain any Facts in Support of Plaintiff's Breach of Contract Claim Against BHIC**

Plaintiff claims that BHIC breached its fee agreement with Plaintiff by failing to pay the

---

[5] Assuming, for the sake of argument, that such a promise is enforceable.

- 13 -

same.  Amended Complaint, ¶ 37 at 21.  However, the Amended Complaint does not contain a single fact supporting breach by BHIC:  there is no allegation of a contract between Plaintiff and BHIC or any facts from which it could even be argued that BHIC had assumed any liability to Plaintiff, nor is there any factual assertion supporting a breach of contract.  Simply stated, Plaintiff has failed to plead any of the required elements of a *prima facie* case for breach of contract.  In fact, except for ¶ 37, the Amended Complaint contains few references to BHIC.  *See* ¶ 6 (alleging that Bill Harbert is the former president and CEO of BHIC); ¶ 16 (suggesting that Plaintiff dealt with some BHIC employees when working on the Kwajalein claims); ¶ 24 ("A separate *qui tam* action was brought against defendants, [sic] HII, HIE, BHIC and others . . . .); and ¶ 34 (stating that Bill Harbert signed the representation agreement purportedly on behalf of HII and BHIC, without alleging any factual basis for this claim).  The last statement is at odds with Plaintiff's statement that "[i]n July, [sic] 1990, defendant, Bill Harbert, then president of *HII* authorized the engagement of plaintiff to provide legal advice and assistance with respect to the Kwajalein contracts, and more particularly to help *HII* in the preparation and presentation of claims for additional compensation for added costs incurred in contract performance."  *Id*., ¶ 13 at 6 (emphasis added).  Also, that "Mr. E. Roy Anderson called plaintiff's office . . . and requested that plaintiff provided defendant, *HII*, with such legal assistance, and more specifically, requested that one of plaintiff's attorneys meet with . . . HII representatives in Honolulu."  *Id*. at 6-7 (emphasis added).  Plaintiff also pleads:  "With its engagement by defendant, *HII*, in July 1990, plaintiff was actually involved on essentially a continuous basis, [sic] in providing legal advice and assistance to *HII* in respect to . . . ." *Id* at 7 (emphasis added).  Therefore, not only has Plaintiff failed to plead any facts to support BHIC's hiring of Plaintiff or

- 14 -

any other basis for liability to Plaintiff, the facts Plaintiff pled clearly show that King & King was working for HII and only HII.

The foregoing considered, the breach of contract claims against both Bill Harbert and BHIC must be dismissed.

### IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST BILL HARBERT OR BIE

Plaintiff seeks damages from Bill Harbert and BIE on the grounds of unjust enrichment *if* the Court determines that Bill Harbert was not authorized to contract with Plaintiff on behalf of HII and *if* the Court determines that BIE was the actual beneficiary of Plaintiff's services. Amended Complaint at ¶ 39.

In its original complaint, Plaintiff did not identify the theory on which those damages are based. In response to Defendants BIE, BHIC and Bill Harbert's first motion to dismiss, in which Defendants noted this shortcoming and had to assume that Plaintiff's claim was based on an implied-in-fact contract, Plaintiff amended its complaint to add ¶ 41 and allege that Defendants BIE and Bill Harbert breached an implied-in-fact contract.

In order to prevail based on an implied-in-fact contract, Plaintiff must show: (1) that the services were carried out under such circumstances as to give Bill Harbert and BIE reason to understand (a) that they were performed for them and *not for some other person*, and (b) that they were not rendered gratuitously, but with the expectation of compensation from Bill Harbert and BIE, and also (2) that the services were beneficial to Bill Harbert and BIE. *Bloomgarden v. Coyer,* 479 F.2d 201, 156 U.S.App.D.C. 109, 116-17. Plaintiff's Complaint is replete with statements that negate any argument that Bill Harbert and/or BIE understood that the services were rendered for them and not HII. *See, e.g.,* ¶¶ 9, 12, 13, 14, 16, 17. Even after the alleged assignment of the contracts to HIE, there is still no allegation by Plaintiff that its services were

rendered for any person or entity other than HII, although Plaintiff alleges that it was directed to move to substitute BIE for HII as appellant after Plaintiff unilaterally – and without HII's consent or authority – moved to reinstate the appeals at the ASBCA. *See, e.g.,* Amended Complaint at ¶ 19 *et seq.* Raymond Harbert, President of HII, refused to ratify the reinstatement, which resulted in the forfeiture thereof.

There is no factual assertion in the Amended Complaint that Bill Harbert was not authorized to enter into the fee agreement with Plaintiff. "The law is clear that a corporation is bound by the acts of its officers so long as they act with either actual or apparent authority." *Columbia Hospital For Women Foundation, Inc., v. The Bank Of Tokyo-Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 7 (1997), *aff'd* 159 F.3d 636, 333 U.S.App.D.C. 46 (D.C.Cir. 1998). There is also no evidence or even allegation that BIE entered into a fee agreement with Plaintiff. To the contrary, and as shown in Section III.C, *supra*, Plaintiff has repeatedly stated as fact that *HII* hired Plaintiff. Furthermore, no reasonable person could find that BIE benefited from Plaintiff's actions, particularly since there was no recovery on the claim before the ASBCA.

V. **THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT DO NOT SUPPORT A CLAIM FOR PIERCING THE CORPORATE VEIL.**

Plaintiffs BIE, BHIC and Bill Harbert have argued, *supra*, that there is no factual or legal basis for piercing the corporate veil and holding any individual Defendant personally liable. To the extent the Court believes additional support for this argument is needed, Plaintiffs BIE, BHIC and Bill Harbert incorporate Section V of the HII Motion to Dismiss herein as if fully set forth.

**CONCLUSION**

For the foregoing reasons, Defendants BIE, BHIC, and Bill Harbert respectfully pray that the Court dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6).

**REQUEST FOR ORAL HEARING**

Pursuant to Local Civil Rules 47(f) and 78.1, Defendants BIE, BHIC and Bill Harbert respectfully request that the Court schedule an oral hearing on this motion.

        Respectfully Submitted

        BILHAR INTERNATIONAL ESTABLISHMENT,
        BILL HARBERT INTERNATIONAL
          CONSTRUCTION, INC.,
        BILL L. HARBERT

By:_____/s/_____
   Laurence Schor (#11484)
   Dennis C. Ehlers (#478721)
   McManus, Schor, Asmar & Darden, LLP
   1155 15th Street, N.W.
   Suite 900
   Washington, D.C. 20005
   Telephone:  (202) 296-9260
   Facsimile:  (202) 659-3732

March 27, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Motion to Dismiss First Amended Complaint and Memorandum of Law of Defendants Bilhar International Establishment, Bill Harbert International Construction, Inc., and Bill L. Harbert and proposed Order were served electronically this 27th day of March 2006 on:

Christopher M. McNulty, Esq.
King & King, Chartered
3033 N. Dickerson St.
Arlington, Virginia 22207
*Counsel for Plaintiff*

and

Michael J. McManus, Esq.
Jeffrey J. Lopez, Esq.
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, D.C. 20005
*Counsel for Defendants Harbert International,
Inc. and Raymond J. Harbert*

                                                            /s/
                                            Dennis C. Ehlers