IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KING & KING, CHARTERED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 1:06-cv-00324 (JDB) |
| HARBERT INTERNATIONAL, INC., ) | |
| *et al.* ) | |
| ) | |
| Defendants. ) | |

**REPLY OF DEFENDANTS HARBERT INTERNATIONAL INCORPORATED AND RAYMOND HARBERT IN SUPPORT OF MOTION TO DISMISS**

Defendants Harbert International, Inc. ("HII") and Raymond J. Harbert ("Raymond Harbert" or "Mr. Harbert"), by and through counsel, hereby submit this Reply in support of their Motion to Dismiss the First Amended Complaint.

**INTRODUCTION**

Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Response") fails to establish that the claims asserted against HII and Raymond Harbert in the First Amended Complaint are actionable. As set forth more fully below, there is no precedent, in the District of Columbia or elsewhere, for an attorney to receive a contingent fee from a case in which its client did not recover money through verdict or settlement. In addition, Plaintiff's reliance on cases involving real estate brokers suing for unpaid commissions is misplaced. District of Columbia law will not award a contingent fee, if a contractual condition precedent is unsatisfied. In any event, Plaintiff's claims are time barred and its attempts to wriggle out from under the limitations bar by arguing that: 1) the alleged breach of contract was the Defendants' failure to pay Plaintiff on a written demand made years after the relevant facts;

2) the accrual of limitations period was delayed because the Defendants committed a continuing tort; and 3) the Court cannot consider that it was the actions of the Armed Services Board of Contract Appeals ("ASBCA") and not Defendants that caused any injury, are all unavailing. Finally, Plaintiff fails to cite to a single allegation in the Amended Complaint that supports piercing the corporate veil to impose personal liability on Raymond Harbert. Accordingly, the Motion to Dismiss should be granted.

## **ARGUMENT**

### I.   PLAINTIFF HAS NOT ADEQUATELY ALLEGED A BREACH OF THE FEE AGREEMENT.

The allegations in the First Amended Complaint establish that recovery on the ASBCA claims was an unsatisfied condition precedent to payment of any contingent fee. First Amended Complaint ¶ 34 at 20. In responding to the Defendants' argument that the condition precedent to payment was unmet, Plaintiff cites to the Restatement Second of Contracts for the general proposition that a plaintiff may recover for breach of contract when the defendant's own conduct has precluded satisfaction of a condition precedent. Response at 11. Plaintiff then suggests that District of Columbia law provides that "in the circumstances presented here" HII is liable to plaintiff for payment of the contingency fee even though it received no recovery on the claims. Id. at 13.

However, there is simply no support for Plaintiff's assertions that District of Columbia law supports a recovery under the facts and circumstances pleaded in this case. First, there are no reported cases, in the District of Columbia or elsewhere, in which a client has been found to owe a contingent fee for a claim on which a monetary recovery was not made by the client. Second, while in rare cases courts have awarded contingent fees to attorneys based on a client's breach of contract during pendency of the claim, such an award requires two preconditions: 1)

the attorney was arbitrarily discharged shortly before conclusion of a contingent fee matter; <u>and</u> 2) the client went on to recover on the claim. Finally, Plaintiff's unexplained reliance on cases in which real estate brokers were awarded commissions, despite the fact that the sales transactions were not completed, is misplaced.

### A. Plaintiff's Claim is Unprecedented.

Plaintiff asserts that Defendants' argument that the Complaint fails to state an actionable claim "turns the law on its head." However, Plaintiff fails to cite to a single case in which an attorney has been awarded a contingent fee from a client who did not recover on the underlying claim. Defendants have searched for such a case, in the District of Columbia and elsewhere, without success.

There is good reason for the absence of favorable authority supporting Plaintiff's claim. In the District of Columbia, lawyers are permitted to enter contingent fee agreements with their clients, but only subject to the requirement of the Rules of Professional Conduct that "a lawyer shall not represent a client with respect to a matter if . . . [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by . . . the lawyer's own financial, business, property, or personal interests." District of Columbia Rules of Prof'l Conduct R. 1.7(b). This tension is accommodated by fee percentage arrangements under which the lawyer's recovery is directly tied to the client's ultimate success on the claim. Implicit (and, as in this case, often explicit) in this agreement is that if the client does not recover, then the lawyer does not receive the contingent fee. To carve out exceptions, whereby the attorney may nonetheless sue the client for a contingent fee even if no recovery is made, would necessarily damage the nature of the attorney-client relationship by creating a potential conflict of interest between the client and its counsel.

In its Response, Plaintiff attempts to sidestep the ethical questions underlying recognition of its claim by stating that "Plaintiff has never failed to abide by the decisions of the client in this case." Response at 12. Yet, while explicitly recognizing that as the client, HII retained control over the ABSCA claim, Plaintiff nonetheless asserts that HII could not exercise full control over the claim "without incurring liability to plaintiff for the contingency fee." Response at 13. This is a Hobson's choice that subverts the interests of the client to the lawyer and creates a plain conflict of interest.[1] The law does not support putting clients in such a position and, accordingly, does not recognize Plaintiff's claim as actionable.

### B.    The Contingency Fee Cases Cited by Plaintiff Do Not Support Attorney Payment Where the Client Does Not Recover on the Underlying Claim.

Plaintiffs cites two District of Columbia cases, Kaushiva v. Hutter, 454 A.2d 1373, 1375 (D.C. 1983) and Mackie v. Howland, 3 App. D.C. 461 (1894), in support of its claim that an attorney may "collect a contingent fee in full if the lawyer has substantially performed." Response at 12. However, as set forth in Defendants' motions to dismiss, Kaushiva and Mackie, along with Green v. Louis Fireison & Assoc., 618 A.2d 185 (D.C. 1992), Greenberg v. Sher, 567 A.2d 882 (D.C. 1989) and In re Waller, 524 A.2d 748 (D.C. 1987) merely support the proposition that an attorney retained under a contingency fee agreement may recover a fee if: 1) he is discharged without cause shortly before the end of the case and; 2) the client recovers on its claim. HII and Raymond Harbert Motion to Dismiss at 7. Neither condition is satisfied in this case. Tellingly, Plaintiff makes no effort to address the holdings in these cases, which are fatal to Plaintiff's claim.

---

[1] Under the logic of Plaintiff's argument, a lawyer would also have a claim against a client for settling a contingent fee case for less than the amount the lawyer believes the case would have received at trial.

4

Moreover, Kaushiva and Mackie involve facts which strongly suggest that the client terminated the attorney in order to avoid paying the fee. In such cases, it would be inequitable to allow the client to profit from the labor of this attorney, while avoiding payment of the attorney's contingent fee. But that reasoning is inapplicable in this case, where Defendants never received any recovery on the claim (and plaintiff was paid an hourly rate of $150 for all work performed on the case).

In Kaushiva, the District of Columbia Court of Appeals affirmed a lower court decision holding that an attorney was entitled to a contingent fee where the client terminated the attorney just prior to recovery. 454 A.2d at 1374. The attorney had been retained by the client to act as counsel in an arbitration under a contingent fee agreement. Id. Following the arbitration hearing, the attorney informed the client that he believed that the case had been won, and that he would present the client with a copy of the court ordered final brief two weeks before the filing deadline. Id. When the client insisted on immediately receiving a copy of the brief, the attorney explained that he could not comply, particularly because the hearing transcripts to be used in the brief were not yet available. Id. The client then terminated the attorney, and subsequently offered the attorney only a nominal sum as compensation. Id. Ultimately, the defendant recovered $149,483.17 as an arbitration award, and the attorney sued to recover his contingent fee. See id.

In affirming the trial court's decision awarding the plaintiff his share of the recovery under the contingent fee agreement, the Court rejected the argument that the attorney did not complete performance of the contract and was therefore entitled only to quantum meruit for his services. See id. at 1373–74 & 1375. Clearly, the holding in Kaushiva is a narrow one: a client

may not receive the benefit of an attorney's work under a contingent agreement and then avoid payment of the full fee by terminating the attorney without cause.

Similarly, in Mackie, the Court of Appeals of the District of Columbia reversed a lower court decision and found that an attorney was entitled to a contingent fee where, shortly before making a recovery based on the attorney's work, the client replaced the attorney and completed the transaction. 3 App. D.C. 461 (1894). In that case, the plaintiff-attorney was retained under a contingent fee agreement in 1868 to pursue a claim to recover the value of numerous bonds that were issued, but dishonored, by Venezuela. Id. at 476. The attorney filed a claim on behalf of his client with a commission in Venezuela, but the claim was rejected. Id. For the next twenty years, the attorney lobbied the United States Congress, the United States Department of State, and the President of the United States to procure the reopening of the commission and allowance of the claim. Id. at 475–77. Finally, in 1889, following the establishment of a new commission, when "the services of [the plaintiff] had been crowned with success and . . . little more remained to be done than to bring the claim formally before the commission," the client revoked the contract with the attorney and retained a new attorney. Id. at 480. Shortly thereafter, the commission awarded payment on the bonds. See id. at 482. The attorney then brought suit against the client to recover its share under the 1868 contingent fee agreement. See id.

Finding that the attorney was entitled to the contingent fee, the Court contrasted the extensive work of the plaintiff with the "infinitesimally small" contribution of the new attorney. Id. at 475. Significantly, the court recognized that "the stipulated services has all been substantially rendered, and the [plaintiff] was ready, willing, and able to complete the small residue of the contract that remained to be performed." Id. at 481.

In sum, both <u>Kaushiva</u> and <u>Mackie</u> set out the parameters for award of a contingent fee to a former attorney: 1) discharge without cause; and 2) recovery on the underlying claim. In addition, each case involved an attempt by the client to evade payment of the attorneys' earned fee. None of those circumstances are alleged to exist in this case and their absence is fatal to Plaintiff's claim. Because no recovery on the ASBCA claims was ever made, there can be no cause of action by Plaintiff for the recovery of the contingent fee.

### C.  Plaintiff's Citation to Real Estate Broker Cases Does Not Support Its Claim.

Plaintiff asserts that "there is ample case law requiring the payment in whole, of contingency fees, where the defendants own conduct or lack of action was the cause of, or precluded achievement of conditions precedent in the contract between the parties." Response at 12. But in support of this claim, Plaintiff fails to cite to any cases involving an attorney seeking payment of a contingent fee from his client. Instead, Plaintiff merely provides a string cite of cases that involve payment of real estate broker commissions, all but one from foreign jurisdictions. Plaintiff does not even attempt to explain how the payment of real estate commissions is analogous to payment of an attorney under a contingent fee agreement. Upon review, the cases are inapposite and do not establish the viability of Plaintiff's claims.

Under District of Columbia law, a real estate broker's right to a commission is wholly dependent on the language of its contract with the seller. As a general matter, sale of the property is not a condition precedent for payment of a real estate commission, which "is usually earned upon procuring a purchaser who is ready, willing and able at the time of settlement to execute a sale on the seller's terms." <u>Mike Palm, Inc. v. Interdonato</u>, 547 A.2d 1016, 1020 (D.C. 1988). In such cases, courts awarding a commission do not excuse conditions precedent, but instead find that the broker's contractual obligation is not dependent on completion of the sale. In contrast, where language in a real estate brokerage agreement makes the commission

7

contingent on sale of the property, District of Columbia courts will not award the commission. See id. (citing Dixon v. Bernstein, 182 F.2d 104, 104 (D.C. Cir. 1950) (broker not entitled to commission where agreement with seller provided "no liability [for the commission] if sale is not settled.")).

In contrast to the real estate cases cited by Plaintiff, in an attorney contingency fee agreement, recovery through settlement or verdict is an express condition precedent to payment of the fee. Absent such a recovery, no fee can be collected. Contrary to Plaintiff's claim, as a lawyer operating under a contingent agreement, it is insufficient to be ready, willing and able to pursue your client's claim; the law provides that the client has ultimate control of the claim and is not liable for payment to the attorney unless a monetary recovery is made.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Even if Plaintiff's claims for breach of contract and tortious interference were actionable, the allegations of the First Amended Complaint establish that Plaintiff failed to assert its claims within the applicable statute of limitations period.

### A.   There is no legal support for Plaintiff's statement that its cause of action for breach of contract accrued upon a "failure to pay."

In its Response, Plaintiff states that the First Amended Complaint alleges a breach of contract based on Defendant HII's failure to pay the Plaintiff. Response at 4–5. The claim that the cause of action did not accrue until the failure to pay is a transparent and legally ineffective effort to avoid dismissal based on limitations. Plaintiff's claims are explicitly predicated on the purported failure to ratify the reinstatement of the appeals by HII and Raymond Harbert. See First Amended Complaint ¶ 34 at 20 ("The total value of [the claims] which were forfeited as a consequence of defendants' *failure to ratify the reinstatement of the appeals, and to permit*

*plaintiff to prosecute the same* . . . was $20,116,762.56) (emphasis added). Indeed, Plaintiff's Response acknowledges that the claim is not based on the failure to pay:

> [T]he injury suffered by plaintiff in this regard arises out of the continuing hindrances and interferences of HII and/or Raymond Harbert to plaintiff's efforts to prosecute the appeals, which culminated in the decision by Raymond Harbert not to ratify the reinstatement of the appeals before the ASBCA.

Response at 9–10. "[R]ecovery on the claims was made impossible solely by breaches of contract and tortious acts and omissions of the defendants." Id. at 12.

Moreover, even if the First Amended Complaint alleged a breach by HII and Raymond Harbert due to a "failure to pay," such allegations do not control this Court's statute of limitations analysis. Plaintiff cites Shalom Baranes Associates, P.C. v. 900 F Street Corporation, 940 F. Supp 1 (D.D.C. 1996) for the proposition that a "failure to make payment . . . constitutes a breach of contract under District of Columbia law." See Plaintiff's Response at 5. That interpretation badly misreads Shalom, an opinion issued at the conclusion of a bench trial in which the defendants conceded that money was owed to the plaintiffs. On the facts of that case, where it was undisputed that money was owed and the defendants' only obligation was to pay, the Court ruled that the agreement was breached when payment was not made within thirty days after invoicing. Shalom, 940 F. Supp. at 5.

Unlike Shalom, the allegations against HII relate to alleged conduct that occurred long before the demand for payment. Indeed, Plaintiff's cause of action is explicitly premised on the theory that Raymond Harbert and HII had a duty to assist Bill Harbert and Plaintiff in the prosecution of the Kwajalein claims. See Response at 11; First Amended Complaint ¶ 19 at 11 & ¶ 42 at 22. In fact it is this conduct that Plaintiff specifically relies on to argue that Defendants "precluded achievement of condition precedent" in the contract. Response at 12.

Under District of Columbia law, a party is in breach when its performance is due. Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 357 F. Supp. 2d 287, 293 (D.D.C. 2005) ("'The cause of action does not accrue[] until the date of the actual breach; that is, until the date on which performance is due.'") (citation omitted). In this case, if there was any breach at all, it occurred no later than November 2002, when Raymond Harbert refused to unconditionally ratify the reinstatement of the appeals before the ASBCA. Plaintiff's cause of action therefore accrued no later than November 2002, and Plaintiff's January 2006 Complaint is barred by the applicable three year statute of limitations.

### B. Plaintiff's claims are not salvaged under a "continuing tort" theory.

In the District of Columbia, a continuing tort may be established by showing a continuous wrong with at least one act occurring within the applicable statute of limitations, with damages flowing from the entirety of the acts rather than from an individual act. Beard v. Edmondson & Gallagher, 790 A.2d 541, 547–48 (D.C. 2002). This rule is allied with the discovery rule, id., and a plaintiff therefore does not have "'carte blanche to defer legal action indefinitely if she knows or should know that she *may* have suffered injury and that the defendant *may* have caused her harm.'" Id. at 546 (quoting Hendel v. World Plan Executive Council, 705 A.2d 656, 660–61 (D.C. 1997) (second and third emphases added). In a continuing tort scenario, "the running of the limitations period is tolled until the continuation of the wrongful conduct renders the existence of the cause of action sufficiently manifest to permit the victim to seek recovery." Beard, 790 A.2d at 548. However, "once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." Id. "Once the plaintiff is on notice of the continuing tort . . . the statute of limitations commences to

run, and claims based on tortious conduct outside the limitations period are time-barred even if claims based on subsequent wrongful activity are not." Id. at 549.

In its Response, Plaintiff argues that the limitations period did not commence until the ASBCA Order of dismissal was entered on January 26, 2003. However, where Plaintiff has knowledge of an actionable claim, the limitations accrual is not postponed until the final ministerial acts of a third party have been completed. Based on the specific allegations in the First Amended Complaint, no reasonable person could find that Plaintiff was not aware of the existence of a claim throughout 2002. See First Amended Complaint, ¶ 26 at 15–16, ¶ 28 at 16, ¶ 31 at 17, ¶ 32 at 17–18. Indeed, Plaintiff concedes in his Response that

> [T]he injury suffered by plaintiff in this regard arises out of the continuing hindrances and interferences of HII and/or Raymond Harbert to plaintiff's efforts to prosecute the appeals, which culminated in the decision by Raymond Harbert not to ratify the reinstatement of the appeals before the ASBCA.

Plaintiff's Response at 9–10.

Finally, Plaintiff fails to plead the occurrence of any acts following the November 2002 hearing that could sustain a claim for tortious interference. Accordingly, even were a claim for tortious interference cognizable under the facts pleaded by Plaintiff, such a claim would be definitively time-barred under the three year limitations rule.

### III. THE COURT IS ENTITLED TO CONSIDER THE ASBCA ORDER IN RULING ON THE MOTION TO DISMISS.

In its Response, Plaintiff claims that the order of the ASBCA dismissing the Kwajalein claims is not before the court, and therefore cannot be considered. Plaintiff's Response at 8. No citation is provided for this assertion, and Plaintiff's statement is incorrect as a matter of law. "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and *matters of which [the court] may take judicial notice*." United States ex rel. Williams v. Martin-Baker

Aircraft Co., 389 F.3d 1251, 1257 (D.C. Cir. 2004) (quoting EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997)) (emphasis added). This Court may take judicial notice of the ASBCA order because the content of the ASBCA's order is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201.

The ASBCA Order is in itself dispositive of Plaintiff's claims because the dismissal of the appeals was the direct result of a decision by the ASBCA, not a result of any act or omission by HII or Raymond Harbert. Absent at least some allegation that the conditions attached to HII's ratification of the reinstatement of the appeal were unreasonable, neither HII nor Raymond Harbert may be found to be the legal cause of Plaintiff's alleged injury.

IV. **PLAINTIFF HAS NOT PLEADED SUFFICIENT FACTS TO SUPPORT PERSONAL LIABILITY OF RAYMOND HARBERT.**

In its Response, Plaintiff claims that it has sufficiently pleaded facts to support a claim to pierce the corporate veil and hold Raymond Harbert personally liable. Plaintiff's Response at 16. In support of this statement, Plaintiff cites eight paragraphs of the First Amended Complaint in which sufficient facts are purportedly "pleaded directly or can be inferred." Tellingly, however, Plaintiff fails to identify a single specific allegation in those paragraphs, instead leaving the Court and the Defendants to speculate as to which facts in Plaintiff's multi-page paragraphs imply circumstances under which the corporate veil should be pierced. A review of the cited paragraphs reveals no allegations that can be fairly read to support piercing of the corporate veil.

Under District of Columbia law, individuals are generally protected from personal liability for actions taken in their corporate capacity. Piercing of the corporate veil is an extreme remedy that is available only when a party has abused the corporate form, and therefore is not

entitled to its protections. A plaintiff asserting a veil piercing claim must allege sufficient facts supporting either of two circumstances:

> (1) whether there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) whether, if the acts are treated as those of the corporation alone, an inequitable result will follow.

Flynn v. Thibodeaux Masonry, Inc., 311 F. Supp. 2d 30, 41 (D.D.C. 2004). The First Amended Complaint fails to make sufficient allegations to support a veil piercing claim under either of these standards.

In considering whether there is sufficient unity of interest to support veil piercing, District of Columbia courts look to six separate factors:

> (1) the nature of the corporate ownership and control; (2) whether the corporation has maintained minutes or adequate corporate records; (3) whether the corporation has maintained corporate formalities necessary for issuance or subscription to stock, such as an independent board of directors' formal approval of the stock issue; (4) whether there is a commingling of funds and other assets of the corporation; (5) whether there is a diversion of the corporation's funds or assets to non-corporate uses such as the personal uses of the corporation's shareholders; and (6) whether the corporation and its individual shareholders use the same office or business location.

Id.    Aside from claims that Raymond Harbert has a substantial ownership interest in HII, nowhere in the First Amended Complaint does the Plaintiff allege facts bearing on any of the Flynn factors.

Similarly, Plaintiff has not pleaded any facts supporting a claim of inherent unfairness to the Plaintiff if the corporate veil is not pierced. Were plaintiff ultimately successful on its claims related to the contingent fee, recovery would appropriately be made from the corporate defendants, not Mr. Harbert personally.

Unable to cite any specific allegations in the First Amended Complaint, Plaintiff contends that its pleading is sufficient under the relaxed pleading standards of the Federal Rules

13

of Civil Procedure. However, while it is true that that the Federal Rules require only a "short and plain statement of the claim," the facts provided must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests*." Conley v. Gibson, 355 U.S. 41, 47 (1957) (emphasis added). Plaintiff simply provides no grounds upon which a claim for veil piercing could rest. Significantly, the Court need not accept as fact Plaintiff's legal conclusions that the corporate veil should be pierced. See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). And legal conclusions are all Plaintiff offers in support of its veil piercing claim.

Finally, Plaintiff asserts that the facts in the First Amended Complaint provide no basis for the inference that Mr. Harbert was acting in his corporate capacity, and that such inference would be unfavorable to the Plaintiff, and is therefore impermissible. Response at 14. This argument is meritless. Mr. Harbert's alleged actions are only relevant to Plaintiff's claims to the extent that they purportedly bound HII, or influenced the ASBCA to dismiss the claims. These actions were plainly taken in Mr. Harbert's capacity as President and CEO of HII. To conclude as much is not to draw an inference to Plaintiff's detriment, but rather to give a plain reading to the First Amended Complaint and recognize that if Mr. Harbert was acting in his personal capacity he would not have had the power to bind HII. Accordingly, dismissal of the personal claims against Mr. Harbert should be made on this basis alone.

## CONCLUSION

For the foregoing reasons, Defendants HII and Raymond Harbert respectfully request that the motion to dismiss be granted and that all claims against them be dismissed pursuant to Rule 12(b)(6).

        Respectfully Submitted

        HARBERT INTERNATIONAL, INC.
        RAYMOND J. HARBERT

By: _____/s/_____
    Michael J. McManus  (#263832)
    Jeffrey J. Lopez     (#453052)
    DRINKER BIDDLE & REATH LLP
    1500 K Street, N.W.
    Suite 1100
    Washington, D.C. 20005
    Telephone: (202) 842-8800
    Facsimile: (202) 842-8465

*Attorneys for Harbert International, Inc. and Raymond J. Harbert*

April 18, 2006