# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KING & KING, CHARTERED,         .
                                .
         Plaintiff,             .
                                .  CA No. 06-0324 (JDB)
    v.                          .
                                .  Washington, D.C.
HARBERT INTERNATIONAL INC.,     .  Wednesday, May 24, 2006
et al.,                         .  10:07 a.m.
                                .
         Defendants.            .
                                .
. . . . . . . . . . . . .       .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:           CHRISTOPHER M. MCNULTY, ESQ.
                             King & King, Chartered
                             3033 N. Dickerson Street
                             Arlington, Virginia 22207
                             703-237-4576

For Defendants               MICHAEL J. MCMANUS, ESQ.
Harbert International        JEFFREY J. LOPEZ, ESQ.
Raymond Harbert:             Drinker Biddle & Reath, LLP
                             1500 K Street, NW
                             Suite 1100
                             Washington, D.C. 20005-1209
                             202-842-8800

For Defendants               DENNIS C. EHLERS, ESQ.
Bilhar International         McManus, Schor, Asmar & Darden, LLP
Bill Harbert International   155 Fifteenth Street, NW
Bill L. Harbert:             Suite 900
                             Washington, D.C. 20005
                             202-296-9260

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             Official Court Reporter
                             U.S. Courthouse, Room 4808-B
                             333 Constitution Avenue, NW
                             Washington, D.C. 20001
                             202-216-0313

1   cause of action accrue?

2          MR. MCMANUS:  The cause of action accrues when they
3   claim the injury took place, and that is, by their allegations,
4   that point at which Raymond Harbert was called to testify as a
5   witness at the hearing before the board and did not, under their
6   theory of the case, unconditionally ratify the assignment of the
7   contract --

8          THE COURT:  The problem with that, or one of the
9   problems with that as the date is that the board itself allowed
10  more time for that to happen.  The board allowed up until
11  January 26 for that to happen.

12         MR. MCMANUS:  No.  The board said if you want to come
13  in and give us something, then you have until January 25.  Very
14  significant difference.

15      And it's a semantic difference, but I think a very
16  significant difference, because all of the other indicia in this
17  case, from 2002, March of 2002, when there were letters written,
18  numerous phone calls that didn't get returned, requests by King
19  & King to both -- only two, to Bill Harbert, actually:  Please,
20  tell me I can go ahead and reinstitute this appeal, which, by
21  the way, on a very important point, he didn't notify us of that,
22  and that's clear from his papers.  He didn't contact us.  We had
23  no knowledge that he was going to go forward and on his own
24  unilaterally reinstate the appeals.

25      All of that information, and Raymond's testimony at

1  deposition under oath, and at the hearing under oath, was
2  consistent. It never changed. I will do it if you meet these
3  conditions. And so he was given more time, he didn't change,
4  and the board dismissed the action. And if we're going to --
5         THE COURT: How can you pick a point in time before
6  January 26 as the end point for the ability of Raymond or anyone
7  else in the Harbert family to -- corporate or otherwise family,
8  to make that representation? Why do you pick necessarily the
9  November hearing date as the end of that when things went on
10 after that?
11        MR. MCMANUS: That's the most generous, and nothing
12 went on after that. Nothing went on after that. Things went on
13 before, and I think reasonably, since --
14        THE COURT: It was still open before the board. It
15 could have happened. The board was providing an opportunity for
16 it to happen.
17        MR. MCMANUS: If that's the case, then I would argue
18 that it's the board that committed the harm by dismissing the
19 case, and not us. If that's the argument that King & King wants
20 to take.
21        THE COURT: But the closure of the ability of the
22 Harberts, and therefore of their attorneys, to recover before
23 the board and for the contingency recovery therefor to occur,
24 the closure of that was really on January 26, wasn't it?
25        MR. MCMANUS: Well, but under these circumstances,

```
 1    D.C. law applies here?
 2            MR. EHLERS: Yes, sir.
 3            THE COURT: Is piercing the corporate veil a cause of
 4    action under D.C. law?
 5            MR. EHLERS: I believe it's a way you can get to
 6    liability on an individual.
 7            THE COURT: Get to recovery. Also liability, I
 8    suppose, but it's not a cause of action itself.
 9            MR. EHLERS: No, correct. But he added that argument
10    in response to our first motion to dismiss, which raised some
11    problems with his pleadings. We believe that they are time
12    barred. We also believe that even if they're not, King & King
13    has admitted that the condition of precedent to the right of
14    payment has not occurred, and that being a recovery; third, that
15    even if it's timely filed and sufficiently pled, the allegations
16    are insufficient to establish claims against our defendants; and
17    finally, that even if all of the above, he gets past all of
18    that, the damages that he seeks are speculative. And I'll have
19    a little more to add to that issue than Mr. McManus.
20       Now, on the statute of limitations, I'd like to give
21    Your Honor nine major dates, any of which could be the end point
22    that Your Honor was asking about earlier. I think we all agree
23    it's when King & King knew or should have known --
24            THE COURT: And this is the breach of contract claim
25    we're talking about, or is this the tortious interference claim?
```

```
 1            MR. EHLERS:  There's no tortious interference against
 2   our defendants.
 3            THE COURT:  Okay.
 4            MR. EHLERS:  We all agree that it's when the plaintiff
 5   knew or should have known of the breach of the contract, and the
 6   first one.  Well, there's been a lot said about what happened at
 7   the hearing, ASBCA and afterwards, but we argue as far back as
 8   August of '01 is where you start building the case that he knew
 9   or should have known.
10       And Your Honor, we invite you to look at it
11   chronologically, as I'll summarize, because it gives you a whole
12   new view of this.  Because in August 20 he got a letter --
13            THE COURT:  Of 2001.
14            MR. EHLERS:  Of 2001.  A letter from King & King to
15   Bill Harbert requesting authority to reinstate, and he got no
16   response, which is not a surprise because he sent it to Bill
17   Harbert instead of HII.  But we believe this is a recognition by
18   King & King that it did not have the authority to reinstate, and
19   therefore, it needed to seek that authority and it did so.  And
20   it acknowledged it got no response.
21       Then on 9/26, that's the second date, he sends a fax and a
22   mail to Bill Harbert.  He says I'm concerned about the
23   inadvertent forfeiture of the appeals, and I would like to file
24   a motion with the ASBCA.  In fact, unless I receive a written
25   instruction to the contrary, I'm going to go ahead and do that.
```

1  Now, we believe that he's doing here is that he's creating his
2  own extension, and you'll see a pattern of this. But he's
3  basically put the client in a situation where first he sends the
4  letter --
5           THE COURT: He meaning King & King?
6           MR. EHLERS: Yes, Your Honor. Sent it first not to
7  HII but to Bill Harbert, and then puts the client in a situation
8  where if he does not respond in writing in a short period of
9  time, that he's going to go ahead and file. So he's seeking the
10 authority and he doesn't get it.
11     Then on 9/29, that is the deadline to reinstate the
12 appeals, if not reinstated by then, they are forever barred.
13 Now, he knew or should have known that HII did not want to
14 pursue these appeals at this point, and the reason is that by
15 this point he had sent a notice that the deadline was
16 approaching. He'd requested authorization to reinstate, he had
17 failed to get that authorization, the deadline had passed on
18 9/29, and HII had never stepped forward and said we want to
19 pursue these appeals.
20     And when he did it, without authority -- HII after the
21 fact, either right away or ever went back and ratified his
22 unauthorized act after the fact. So what he did was he, without
23 authority, filed this, and now is advancing his ability to claim
24 that he's within the statute of limitations. So we believe
25 9/29, by that point, when his --

1   THE COURT: King & King didn't do it on September 29
2   in terms of reinstating the appeal.
3   MR. EHLERS: They did it on the 28th, Your Honor, as I
4   understand it.
5   THE COURT: They didn't do that on the 28th in order
6   to come within the statute of limitations. You're arguing now
7   that that --
8   MR. EHLERS: Correct, but it goes to the knew or
9   should have known, and when you have a drop-dead date where your
10  claim is forever forfeited, and you send your client this and
11  you're not getting a response, I think at that point King & King
12  had a good idea, knew, should have known, that the client did
13  not want to pursue these claims. But it went ahead without
14  authorization and did it anyway, putting its interest, we
15  believe, in front of the client's.
16  So by 9/29 I would argue they had enough information.
17  However, if that didn't get it, then certainly the next date,
18  the fourth date, March 14, gets a letter from Spriggs basically
19  saying that all communications are to go through Mr. Joel
20  Piassick, and this was in response specifically to a memo and
21  letter sent the day before by King & King requesting
22  authorization and requesting them to advise -- in essence to
23  accept this letter, this draft letter, and advise the ASBCA that
24  HII is the appellant and that King & King is acting as HII's
25  attorneys for the last 10 years.

```
 1          So he sends them this letter the day before, and they
 2   respond, completely ignoring that, and essentially refusing to
 3   give him that authorization.
 4          Basically it totally rejects his letter and his plan, and
 5   we don't know how he could not have known at that point that his
 6   client had no interest in pursuing these claims any further
 7   and/or had no interest in ratifying his unauthorized
 8   reinstatement.
 9          Then he asserts by his own pleading that from that point on
10   HII and Spriggs had contended they had no interest in the
11   appeals or the claims, that they repeatedly hindered his efforts
12   to prosecute these appeals, that the hindrance and interference
13   manifested itself in many forms.  I don't know if Your Honor --
14   there's like five or six, I believe.  You mentioned them.  I can
15   go through them real quick.
16              THE COURT:  Just give me the dates that you think are
17   crucial.
18              MR. EHLERS:  Well, he doesn't set dates for these, but
19   he says that from that point forward, being March of '02.  And
20   that includes demands that they enter into onerous agreements,
21   attempts to preclude him from contacting the ASBCA.  I think
22   that's a pretty big hint.  Other conditions of representation.
23   And he says, Mr. McNulty on behalf of King & King says if in
24   force these would have made it practically impossible for King &
25   King to represent HII at the ASBCA.
```

         That's pretty strong language in his own complaint saying it was impossible. And yet he says he still didn't have a clue, King & King didn't have a clue that the client did not want to move forward. And he also states HII insisted that the plaintiff make factual representations to the ASBCA, that in the plaintiff's view would have resulted in a forfeiture.

         Now, again, there's no dates on that, but he says starting from March 14 onward. We believe after all of this, certainly by March 14, King & King knew or should have known.

         If that wasn't enough, then the next date is sometime in July of '02 when Mr. Raymond Harbert refused to make himself available for a deposition. If that doesn't get it, then October 11, '02, a letter to Spriggs advising that HII should begin an audit to assure that the unqualified ratification of the reinstatement could be made. And the pleading states that no response was ever received. This is October of '02.

         The next date is November 18 of '02. And that's the ASBCA hearing. At which time Mr. Raymond Harbert is called as a witness for the government, and was repeatedly asked to ratify and would not. Even when told the significance and necessity of ratifying for these appeals to go forward. In other words, you don't ratify, you lose your right to go forward on the appeals. And yet he refused to ratify.

         Finally, on 12/20/02, King & King received an order from the ASBCA, either unconditionally ratify or show cause why

appeal should not be dismissed with prejudice within 30 days. Your Honor, that's, how many did I say, nine?

THE COURT: That's eight.

MR. EHLERS: Eight. It's eight. Eight different times that King & King had notice that these claims were not something that the client wanted to pursue.

Now, he filed on 1/20/06. We claimed it was late on its face, and in the first amended complaint he tries to come back and bridge the gap between November 20 and January 26, but we would argue that that's really not -- that's sort of a red herring. It's not from November 20 to January; it's all these other dates, Your Honor.

And if you look at the WMATA case, versus Quik Serve, which we had cited, it took a lot less notice than King & King had for the court to find that that claim was barred by the statute of limitations.

Another point, Your Honor, we think is very important is that none of the events or circumstances after 9/29/01 would have occurred but for his unauthorized ratification -- I mean unauthorized reinstatement of this. So in essence it's sort of bootstrapping. He's now relying on all these acts which, but for his unauthorized act, would not have occurred.

The conclusion is King & King has not shown and it cannot show any set of facts that would bring it within the statute of limitations. And like in WMATA the Court should find that it's

1   barred.  And again, throughout this chronology, Your Honor, we
2   believe that --
3              THE COURT:  And even if there had been a specific
4   request for payment, at any point, let's say a request saying --
5   well, let's say a request made in December of '02 by King &
6   King, saying you're refusing to go forward with this, that's
7   preventing us from recovering on the contingency agreement, we
8   demand payment of such-and-such amount, which whatever their
9   computation is, let's say it's the $4,700,000 computation that
10  they have in their current complaint.
11             MR. EHLERS:  First we'd be reading facts into the
12  pleading which are not there --
13             THE COURT:  Let's say there was a demand for payment
14  made at that point, demanding payment within 30 days, and that
15  payment wasn't made.  That would be in your view irrelevant to a
16  breach of contract.
17             MR. EHLERS:  Yes, Your Honor.  If you have a simple
18  contract and it's breached in one way multiple times, and it's
19  not an installment contract, at some point we have shown he knew
20  or should have known, and if then, after January 20 of '03 he
21  sends or letter, or even -- within that period, he sends a
22  letter and requests payment, that would be trying to bootstrap
23  your way into the statute of limitations, when all along the law
24  says you knew or should have known back then.
25             He had eight opportunities at least.  So sending a letter

```
 1   saying now pay me because otherwise I will consider it a
 2   breach --
 3           THE COURT: There's a certain degree of reasonableness
 4   that's necessary. But straight payment of money, if that's the
 5   performance that's not being made, and someone says I don't
 6   think I'm going to pay you, I don't think you did good work, and
 7   said that six times, but then there's a formal demand for
 8   payment made and a failure to pay, in a lot of circumstances --
 9   it'll depend on the facts, but in a lot of circumstances that
10   formal demand and failure to pay will be the accrual of the
11   breach of contract claim, even though there have been earlier
12   indicia that it's possible or even likely that payment would not
13   be made.
14           MR. EHLERS: Well, Your Honor, in this case --
15           THE COURT: It will depend on the facts.
16           MR. EHLERS: Yes. In this case the indicia are quite
17   strong. In fact, when you're dealing with things like a
18   drop-dead date for your claim to be forfeited --
19           THE COURT: The problem is that even though the
20   indicia are quite strong, on the contingency payment claim, the
21   breach of contract by failure to pay this higher amount by
22   virtue of a contingency award, that was theoretically still open
23   because the matter before the ASBCA was still open. It could
24   have proceeded to recovery and therefore contingency fee
25   payment.
```

1         MR. EHLERS:  Your Honor, it was only open because he
2  unauthorized --
3         THE COURT:  I understand that.
4         MR. EHLERS:  -- reinstated it, and despite his
5  client's many indications they didn't want him to reinstate it.
6      Your Honor, dealing now with the issue of the complaint
7  failing to state a claim against Bill Harbert and BHIC for the
8  breach of contract, I won't repeat anything regarding the breach
9  and the contingent fee except that we agree that a recovery is a
10 condition precedent to actually getting a contingency fee,
11 otherwise it would not be a contingency fee.
12     And that plaintiff cannot allege that this condition
13 precedent was met and has not alleged that.  And I think we need
14 to distinguish the situation here from those in cases where,
15 that's cited by King & King, where the client fired without
16 cause the attorney right before recovery was achieved, but a
17 recovery was achieved.
18        THE COURT:  I think that's clearly a different
19 situation.  I haven't seen any case where there was no recovery
20 and yet there was a claim sustained for contingency payment.
21        MR. EHLERS:  Correct.  And his argument that plaintiff
22 substantially performed misses the point, of course, that a lot
23 of attorneys substantially perform and then don't get a recovery
24 and then they don't get their contingency fee.
25     Now, somehow what King & King implies here is different,

Bryan A. Wayne, RPR, CRR
Official Court Reporter