IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KING & KING, CHARTERED,** )  )  **Plaintiff,** )  )  v. )  )  **HARBERT INTERNATIONAL, INC.,** )  *et al.,* )  )  **Defendants.** ) | Civil Action No. 1:06-cv-00324 (JDB) |

**SUPPLEMENTAL BRIEF OF DEFENDANTS BILHAR INTERNATIONAL
ESTABLISHMENT, BILL HARBERT INTERNATIONAL CONSTRUCTION,
INC., AND BILL L. HARBERT IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S REVISED SECOND AMENDED COMPLAINT</u>**

Defendants Bilhar International Establishment ("BIE"), Bill Harbert International Construction, Inc. ("BHIC") and Bill L. Harbert ("Bill Harbert") (collectively "B Defendants"), by and through counsel, hereby submit their Supplemental Brief[1] in support of their Motion to Dismiss Plaintiff King & King, Chartered's ("King & King") Revised Second Amended Complaint ("Motion")[2] for failure to state a claim upon which relief can be granted.

---

[1] In accordance with the Court's Minute Order dated May 25, 2006.

[2] On May 24, 2006, the Court advised the parties that it would grant Plaintiff's Motion for Leave to File Second Amended Complaint. On May 31, 2006, Plaintiff finally filed its Revised Second Amended Complaint. Thus, B Defendants' Motion to Dismiss First Amended Complaint, as supplemented hereby, should be considered a motion to dismiss Plaintiff's Revised Second Amended Complaint.

### I. PLAINTIFF HAS MADE ADMISSIONS WHICH ESTABLISH THAT IT CAN RECOVER, IF AT ALL, ONLY FOR THE NEW CLAIM(S) ASSERTED IN ITS REVISED SECOND AMENDED COMPLAINT.

Although Plaintiff notified counsel for the B Defendants that it was seeking leave to amend its First Amended Complaint to add *quantum meruit* as a theory of recovery, its Revised Second Amended Complaint ("Revised Second Complaint") adds only one paragraph (¶ 44),[3] which fails to identify *quantum meruit* or any other theory of recovery.  As argued by B Defendants during the oral argument, as well as in their Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint, ¶ 44 in the Revised Second Complaint seeks reformation, not *quantum meruit*.  Nevertheless, the B Defendants will address both restitution theories and show that Plaintiff is not entitled to recovery under either.

As an initial matter, Plaintiff's "amendment" should be limited to the additional claim raised in ¶ 44 of the Revised Second Complaint since, in its pleadings and in open Court, Plaintiff unequivocally admitted five key facts that prohibit its right to recover under the other paragraphs and legal theories of the Revised Second Complaint:

1) a written fee agreement ("Agreement") exists.  *See* Revised Second Complaint, ¶ 34, p. 20 ("plaintiff is entitled to payment under *the* contingency fee agreement . . .," and "reduced hourly rates plaintiff billed previously under *the* contingent fee agreement" (emphasis added)); ¶ 44, pp. 22-23 ("plaintiff was working on behalf of defendants pursuant to *the* contingent fee agreement" (emphasis added)); *see also* Transcript of May 24, 2006 Oral Argument ("Tr.") at 47, ln. 13-20.

2) the Agreement, as amended, establishes Plaintiff's compensation as "a reduced hourly fee of $150.00, plus a contingency or success fee of 20% of the first $2,000,000 recovered and 25% of all amounts recovered in excess of $2,000,000; with all amounts paid for services at the hourly rate to be deducted from any amount due on the contingency or success fee."  *See* RSAC, ¶ 34, p. 20; *see also* Tr. at 51, ln. 17-24; 58 ln. 3-25.

---

[3] RSAC ¶ 44 is the same as ¶ 2 of the original Second Amended Complaint.

3) Plaintiff was paid 100% of the hourly fees it billed Defendants under the Agreement, as amended.[4]  *See* Revised Second Complaint, ¶ 34, p. 20 ("plaintiff is entitled to payment under the contingency fee agreement on said sum in the amount of $4,779,830.20, *which amount includes deductions for amounts previously paid by defendants to plaintiff for the reduced hourly rates plaintiff billed previously under the fee agreement*."(Emphasis added)); *see also* Tr. at 46, ln. 3-11.

4) Defendants never recovered on their claims before the Armed Services Board of Contract Appeals ("ASBCA").  *See* Tr. at 59, ln. 22 – 60, ln. 18.

5) there is no case law supporting Plaintiff's breach of contract claim, which is based on Defendants' alleged failure to pay a contingency fee when there was no recovery.  *See* Tr. at 52, ln. 11-25.  Thus, Plaintiff has admitted facts that establish its failure to state a claim upon which relief can be granted.

Plaintiff's admissions, coupled with the legal arguments in Defendants' Motion and during oral argument, establish that Plaintiff cannot recover under any theory advanced in the First Amended Complaint and can recover, if at all, only under the claim(s) advanced in the Revised Second Complaint, *i.e.,* through reformation or in *quantum meruit*.  Thus, the Court should find that the most Plaintiff can recover is the difference between the hourly fee it was paid and the "reasonable value of the services it rendered on behalf of defendants," *see* Revised Second Complaint ¶ 44, subject to proof of the "reasonable value."  Plaintiff's own admissions bar any recovery under the "contingency fee" portion of the alleged Agreement.

---

[4] Regarding the ambiguous statement in ¶ 44 of the Revised Second Complaint that, from 1995 on, "[P]laintiff received either no hourly fee, or a substantially reduced hourly fee for its efforts", at oral argument counsel for Plaintiff clarified that the original 1995 fee agreement established a straight contingency fee but that, in a 1997 amendment to the fee agreement, which amendment was entered into at Plaintiff's urging, the method of compensation was changed to the mixed hourly fee plus contingency fee described in ¶ 34.  *See* Tr. at 47, ln. 14 – 49, ln. 16.

## II. IF THE REVISED SECOND COMPLAINT SEEKS REFORMATION OF THE AGREEMENT, IT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Paragraph 44 of the Revised Second Complaint can most reasonably be construed as a request for reformation of the Agreement to increase the $150 hourly rate to an unspecified "reasonable rate." In the first sentence of ¶ 44 and during oral argument, Plaintiff admitted the existence of a binding Agreement,[5] stating "plaintiff was working on behalf of defendants *pursuant to **the** contingent fee agreement* [under which Plaintiff allegedly] received either no hourly fee, or a substantially reduced hourly fee for its efforts" from February 1995 on. (Emphasis added.) In the last sentence, Plaintiff claims that it is entitled to be compensated for the "reasonable value" of those *same* services during the *same* period. *See Id*. ("Plaintiff is entitled to be compensated in an amount equal to the reasonable value of the services it rendered on behalf of defendants during the period [beginning in] February 1995 . . . .") Plaintiff apparently now believes that the agreed-upon "reduced hourly fee" was too low and seeks to have the Court rewrite the Agreement to increase the hourly fee to an (unstated) amount that compensates Plaintiff for the "reasonable value of [its] services." *Id*.

To the extent Plaintiff is seeking reformation of the Agreement, it has failed to plead facts necessary to support such action. Reformation is properly ordered in very limited circumstances. *See, e.g., Air Line Pilots Association v. Shuttle, Inc.,* 55 F.Supp.2d 47, 54-55 (D.D.C. 1999). There the court, after finding that summary judgment could not be granted based on scrivener's error, or "mutual mistake," addressed the propriety of reformation based on unilateral mistake:

> Adopting the approach of the Restatement (Second) of Contracts, the District of

---

[5] Tr. at 47, ln. 13-20. Plaintiff also admits the existence of a fee agreement at ¶¶ 34, 36, 38, 39, 40, 41, and 42 of the Revised Second Complaint.

> Columbia Court of Appeals has held that unilateral mistake is a valid defense to a contract claim and that a contract is voidable if "one party is reasonably mistaken about a material aspect of the contract and ... the other party knew or should have known of that erroneous understanding" and if the mistaken party "does not bear the risk of the mistake." *Flippo Constr. Co. v. Mike Parks Diving Corp.,* 531 A.2d 263, 270-74 (D.C. 1987) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 153, 154 (1981)), *see Sutton v. Banner Life Ins. Co.,* 686 A.2d 1045, 1051 (D.C.1996). While the District of Columbia courts have never addressed whether the doctrine of unilateral mistake also allows a court to reform a contract, the Restatement, on which the *Flippo* holding is based, allows reformation only in circumstances of mutual mistake of fact, not unilateral mistake. *See* RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981) ("Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of **both** parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement ...") (emphasis added).
>
> Two judges of this Court also have held that reformation is an available remedy only when there has been a **mutual** mistake of fact. *See Mulligan v. Resolution Trust Corp.,* 903 F.Supp. 121, 124 (D.D.C.1995) (Robertson, J.) ("A mistake of fact can be the basis for reformation of a contract, but the mistake must be mutual"); *Northwest Pipeline Corp. v. Helms,* 583 F.Supp. 37, 39 (D.D.C.1983) (Oberdorfer, J.) ("Reformation is appropriate only to conform the agreement to the intentions of the parties at the time they contracted.... Absent clearer evidence of a mutual intent of the parties ..., reformation would be inappropriate"). Finally, while a number of other circuits have allowed reformation of a contract for unilateral mistake, they have invoked the remedy only when the nonmistaken party has engaged in fraud or inequitable conduct. *See, e.g., Amwest Savings Ass'n v. Statewide Capital, Inc.,* 144 F.3d 885, 890 (5th Cir.1998) (applying Texas law); *Hanover Ins. Co. v. American Engineering Co.,* 105 F.3d 306, 311 (6th Cir.1997) (applying Kentucky law). There are no allegations of fraud in this case. The Court therefore concludes that it may not reform the Plan under the doctrine of unilateral mistake. This case will be scheduled for trial on the issue of whether the Plan should be reformed for a scrivener's error or mutual mistake of fact.

*See also Atlas Corp. v. United States,* 895 F.2d 745, 750 (Fed.Cir. 1990) ("A court should not decree reformation unless **convincing evidence** exists that the parties intended and agreed to the terms that the court is asked to enforce*.*" Emphasis added); *American President Lines. Ltd. v. United States,* 821 F.2d 1571, 1582 (Fed.Cir. 1987) ("The purpose and function of the reformation of a contract is to make it reflect the true agreement of the parties on which there was a meeting of the minds.").

Myriad other cases in this jurisdiction are to the same effect. *See, e.g.*:

- *Isaac v. The First National Bank of Maryland, D.C.*, 647 A2d.1159, 1162 (D.C. 1994) (reformation permitted to correct scrivener error);
- *Northwest Pipeline Corp. v. Helms,* 583 F.Supp. 37, 39 (D.D.C. 1983) ("Reformation is appropriate only to conform the agreement to the intentions of the parties *at the time they contracted*." Emphasis added);
- *Mulligan v. Resolution Trust Corp.,* 903 F.Supp. 121, 124 (D.C.C. 1995) (for a mistake of fact to support reformation, it must be mutual. "'Mistake' in the law of contracts refers to a belief that is not in accord with the facts as they stood *at the time the contract was made*." Emphasis added);
- *Merritt v. Kay,* 295 F. 973, 976 (D.C.App. 1924) (reformation permitted when a party was induced by fraud, misrepresentation, or deceit or if by mutual mistake the contract fails to express the parties' real agreement"); and
- *Bagley v. Foundation for the Preservation of Historic Georgetown*, 647 A.2d. 1110, 1114 (D.C. 1994) (no reformation in the absence of proof by Bagley that the Foundation knew or should have known of Bagley's allegedly mistaken understanding of the parties' agreement.

It is also well established that a court cannot rewrite a contract simply because one of the parties is unhappy with the bargain it struck. *See Cafritz v. Cafritz,* 347 A.2d 267, 269 (D.C. 1975) where the court denied reformation, stating:

> Plaintiff is a man of substantial business acumen . . . . In his deposition, he stated that he had read the partnership agreement before signing it . . . [and] plaintiff does not claim that he failed to understand the agreement. Reformation is inappropriate in this case.

*Accord Providence Hospital v. Group Hospitalization, Inc.,* 494 A.2d 639, 640 (D.C. 1985), ("There being no fundamental infirmity in the bargaining or drafting phases of the contract, we cannot now reform the parties' agreement because of changed circumstances which now make the arrangement fiscally unattractive to one party.")

Plaintiff has not alleged that it did not understand the Agreement, that the Agreement did not reflect the parties' contract when drafted, or that Defendants procured Plaintiff's consent to the Agreement by fraud or misrepresentation. To the contrary, Plaintiff has admitted that – at its sole request and initiative – the initial contingency-only Agreement was amended to allow

- 6 -

Plaintiff to recover certain of its fees at a specified fixed hourly rate, with any additional fees contingent on recovery in the ASBCA appeals. *See* Tr. at 49 ln. 6-16. Moreover, it is the B Defendants' understanding that Plaintiff itself drafted the Agreement, which Plaintiff has never denied. Thus, the fact that the Agreement is now "fiscally unattractive" to Plaintiff does not entitle it to reformation.

### III. IF THE REVISED SECOND COMPLAINT SEEKS RECOVERY IN *QUANTUM MERUIT*, IT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

*Quantum meruit* "may refer to either an implied contractual duty or a quasi-contractual duty requiring compensation for services rendered." *Virtual Defense and Development International, Inc. v. Republic of Moldova*, 113 F.Supp.2d 9, 19.[6] In the District of Columbia, recovery under *quantum meruit* "is not applicable when compensation of the parties is covered by an express written contract." *Bingham v. Goldberg Marchesano Kohlman, Inc.*, 637 A.2d 81, 94 n. 30 (D.C. 1994) (citing *Standley v. Egbert*, 267 A.2d 365, 368 (D.C. 1970)).[7]

---

[6] *See also Fred Ezra Co. v. Pedas*, 682 A.2d 173 (DC. App. 1996) (*quantum meruit* is a measure of damages, not a legal theory of recovery, which encompasses both implied-in-law obligations (quasi-contracts) and implied-in-fact contracts). *Cf. Fischer v. Flax*, 816 A.2d 1, 10-11, n.11, 12 (D.C. App. 2003) (suggesting that *quantum meruit* is an implied-in-fact contract theory of recovery).

[7] *See also Finard & Co., Inc. v. Capitol 801 Corp.*, 749 F.Supp. 15, 18 (D.D.C. 1990) ("[Plaintiff] may not now seek equitable relief [under *quantum meruit*] when its compensation is specifically set forth in a written contract agreed to by the parties."); *Chancellor v. L.J. Hooker Commercial Real Estate, Inc.*, 690 F.Supp. 35 (D.D.C. 1988) (denying recovery where a written agreement outlined plaintiff's compensation "*including circumstances in which he would not be paid*" (emphasis added)); *Leba v. Sills*, 175 A.2d 599, 600 (D.C. 1961) ("it has consistently been held that a plaintiff cannot claim or recover on a quantum meruit theory when the rights of the parties and the basis of compensation are covered by a special contract."); *Fischer v. Flax*, 816 A.2d at 11 (*quantum meruit* recovery allowed after trial court found the written agreement unenforceable as a matter of law); *Ginberg v. Tauber*, 671 A.2d 543, 544 (D.C. 1996) (attorney allowed recovery in *quantum meruit* in the absence of a written fee agreement or other formal contract).

The Revised Second Complaint and Plaintiff's counsel's statements at oral argument admit the existence of the Agreement and the terms thereof, including – by implication – those circumstances under which Plaintiff would not be paid (*i.e.*, if there was no recovery in the ASBCA appeals).  Therefore, Plaintiff is precluded from recovering in *quantum meruit*.

Even if the District of Columbia allowed recovery in *quantum meruit* despite a written agreement, Plaintiff was required to plead (with supporting facts) that: (1) it rendered valuable services, (2) for the B Defendants,[8] (3) which services were accepted and enjoyed by the B Defendants, (4) under such circumstances as reasonably notified the B Defendants that Plaintiff, in performing such services, expected to be paid.  *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 176 (D.C. 1996) (citing *TVL Assocs. V. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C. 1984) and *In re Rich*, 337 A.2d 764, 766 (D.C. 1975)).

Plaintiff has not alleged that it rendered valuable services to any of the Defendants, especially since it admitted that it has been paid for all of the services subject to the hourly rate and that it never achieved any recovery upon which a contingency fee could be based.  As Plaintiff acknowledged, the claims before the ASBCA were never tried.  See Tr. at 59 ln. 13 – 60 ln. 13.  Therefore, Plaintiff cannot show that it rendered valuable services beyond the November 18, 2002 ASBCA hearing and the Court should so find.

Plaintiff has also failed to plead that any "valuable services" were accepted and enjoyed by the B Defendants.  To the contrary, the facts pled by Plaintiff show that none of the Defendants was interested in pursuing the ASBCA claims or ratifying Plaintiff's unauthorized

---

[8] As against Defendants HII and Raymond Harbert, Plaintiff would have to prove the same elements.

actions with respect thereto, nor did they accept or enjoy any benefits of Plaintiff's work beyond, at the latest, November 18, 2002.

Plaintiff failed to plead the existence of facts that could be construed to reasonably notify the B Defendants that Plaintiff expected the B Defendants to pay for any services performed by Plaintiff in excess of those for which Plaintiff was paid its agreed hourly rate.  In fact, Plaintiff has not alleged that the B Defendants even knew that Plaintiff was continuing to perform any "services" beyond the ASBCA hearing in November 2002.  *See* Second Revised Complaint, ¶ 33.  To the contrary, the language of the Revised Second Complaint shows that the B Defendants were on reasonable notice that they would *not* be expected to pay anything further beyond hourly fees incurred, since additional compensation was contingent on recovery in the ASBCA appeals, which never occurred.  *Id*. at ¶34.  Expenditures in preparation for performance that do not confer a benefit on the other party do not give rise to a restitution interest.  *See Novecon Ltd. V. Bulgarian-American Enterprise Fund*, 190 F.3d 556, 566 (D.C. 1999) (citing Restatement (Second) of Contracts § 370 cmt. a (1980)).

Finally, even if the written Agreement did not bar Plaintiff's *quantum meruit* recovery, and even if Plaintiff had properly pled all elements and sufficient facts in support of recovery on that basis, Plaintiff still cannot recover.  All of the cases Plaintiff has relied on involved a recovery by the client.[9]  Plaintiff admitted that it is unaware of any case where a plaintiff recovered a contingent fee in the absence of recovery for its client.

---

[9] *See Kaushiva v. Hutter*, 454 A.2d 1373 (D.C.), *cert denied*. 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983); *Mackie v. Howland*, 3 App.D.C. 461 (1894).  In *In re Waller*, the District of
(continued…)

### IV. B DEFENDANTS MAINTAIN THAT PLAINTIFF'S CLAIMS, EVEN UNDER ITS LATEST THEORIES OF RECOVERY, ARE BARRED BY THE STATUTE OF LIMITATIONS.

B Defendants maintain that the Court need not reach the issues discussed above, as Plaintiff's claims are all, regardless of the theory of recovery advanced, barred by the statute of limitations. B Defendants refer the Court to their statute of limitations arguments in their Motion and reply brief, as well as their counsel's arguments during the May 24, 2006 hearing, *see* Tr. at 27 ln. 20 – 34 ln. 2; 75 ln. 22 – 78 ln. 23, all of which are incorporated herein as if fully set forth.

### CONCLUSION

In consideration of Defendants' Motion and the foregoing, B Defendants respectfully pray that the Court dismiss all Plaintiff's claims against them pursuant to Rule 12(b)(6).

Respectfully submitted,

BILHAR INTERNATIONAL ESTABLISHMENT,
BILL HARBERT INTERNATIONAL
  CONSTRUCTION, INC.,
BILL L. HARBERT

By: _____/s/_____
   Laurence Schor (#11484)
   Dennis C. Ehlers (#478721)
   McManus, Schor, Asmar & Darden, LLP
   1155 15th Street, N.W.
   Suite 900
   Washington, D.C. 20005
   Telephone: (202) 296-9260
   Facsimile: (202) 659-3732

---

(..continued)
Columbia Court of Appeals, after discussing *Kaushiva* and *Mackie*, stated that "[i]n both of these cases, then, the attorneys had performed extensive services in pursuit of the client's objective, services which contributed to *the client's actual recovery*." 524 A.2d 748, 750 (D.C. App. 1987) (emphasis added).

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served electronically this 1st day of June 2006 on:

Christopher M. McNulty, Esq.
King & King, Chartered
3033 N. Dickerson St.
Arlington, Virginia 22207
*Counsel for Plaintiff*

and

Michael J. McManus, Esq.
Jeffrey J. Lopez, Esq.
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, D.C. 20005
*Counsel for Defendants Harbert International,
Inc. and Raymond J. Harbert*

_____/s/_____
Dennis C. Ehlers